# COFFIN *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF INDIANA.

*No.* 801. Argued March 5, 6, 1896. — Decided May 4, 1896.

*Coffin* v. *United States*, 156 U. S. 432, affirmed on the following points:
  (1) That the offence of aiding or abetting an officer of a national bank
      in committing one or more of the offences set forth in Rev. Stat.
      § 5209, may be committed by persons who are not officers or
      agents of the bank, and, consequently, it is not necessary to aver
      in an indictment against such an aider or abettor that he was an
      officer of the bank, or occupied any specific relation to it when
      committing the offence;
  (2) That the plain and unmistakable statement of the indictment in that
      case and this, as a whole, is that the acts charged against Haughey
      were done by him as president of the bank, and that the aiding
      and abetting was also done by assisting him in the official capacity
      in which alone it is charged that he misapplied the funds.
Instructions requested may be properly refused when fully covered by the
  general charge of the court.
When the charge, as a whole, correctly conveys to the jury the rule by
  which they are to determine, from all the evidence, the question of in-
  tent, there is no error in refusing the request of the defendant to single
  out the absence of one of the several possible motives for the commis-
  sion of the offence, and instruct the jury as to the weight to be given to
  this particular fact, independent of the other proof in the case.
The refusal to give, when requested, a correct legal proposition does not
  constitute error, unless there be evidence rendering the legal theory ap-
  plicable to the case.
When it is impossible to determine whether there was evidence tending to
  show a state of facts adequate to make a refused instruction pertinent, and
  there is nothing else in the bill of exceptions to which the stated princi-
  ple could apply, there is no error in refusing it.
Several other exceptions are examined and held to be without merit.
A bank president, not acting in good faith, has no right to permit over-
  drafts when he does not believe, and has no reasonable ground to believe,
  that the moneys can be repaid; and if coupled with such wrongful act,
  the proof establishes that he intended by the transaction to injure and
  defraud the bank, the wrongful act becomes a crime.
When the principal offender in the commission of the offence made criminal
  by Rev. Stat. § 5209 and the aider and abettor were both actuated by the

criminal intent specified in the statute, it is immaterial that the principal offender should be further charged in the indictment with having had other intents.

THE various counts of the indictment in this case charged Francis A. Coffin, the plaintiff in error, Percival B. Coffin, and Albert S. Reed with having (in violation of section 5209 of the Revised Statutes) aided and abetted one Haughey, as president of the Indianapolis National Bank, in criminal misapplications of the moneys, funds and credits of that bank, and with having aided and abetted the making or ·causing to be made by Haughey of a false entry on the books of the bank. A prior conviction of the plaintiff in error and Percival B. Coffin, upon the indictment in question, was here reviewed and the verdict and sentence were reversed. 156 U. S. 432. On the second trial only seventeen out of the fifty counts contained in the indictment were submitted to the jury, and a verdict was returned finding the plaintiff in error guilty on seven counts, that is, Nos. 4, 9, 11, 12, 13, 14 and 39, and the defendant Percival B. Coffin not guilty. After the overruling of a motion for a new trial and in arrest of judgment, plaintiff in error was sentenced on each of the seven counts to imprisonment in the penitentiary for eight years. The imprisonment under each count was ordered to be concurrent and not cumulative. This writ of error was thereupon sued out.

*Mr. W. H. H. Miller* and *Mr. Ferdinand Winter,* (with whom was *John B. Elam* on the brief,) for plaintiff in error.

*Mr. Solicitor General* for defendants in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

Fifty-two requests for instructions were submitted on behalf of the defendants to the trial court. The assignments of error are sixty-two in number. The uselessness of this multitude of assignments is demonstrated by the fact that but nineteen out of the sixty-two were relied upon at bar. These nineteen are grouped in the brief of counsel for plaintiff in error under

twelve headings. We shall confine our examination to the consideration of the matters embraced under these headings. and in the order in which they are discussed by counsel.

I. Point 1 alleges that the court erred in refusing to give instructions requested, numbered 47 and 48.

No. 47 reads as follows :

"47. In the indictment in this case it is charged that Theodore P. Haughey, president of the Indianapolis National Bank, with intent to injure and defraud the bank, wilfully misapplied the funds of the bank, and also that, with intent to defraud the bank and to deceive an agent appointed or to be appointed to examine its affairs, he made or caused to be made false entries upon the books of the bank. The defendants Francis A. Coffin and Percival B. Coffin are charged with having, with like intent, aided and abetted said Haughey in said wrongful acts. In order to sustain this charge of aiding and abetting against the defendants the evidence must show beyond a reasonable doubt that the defendants acted in the matter with a like intent as that attending the action of Mr. Haughey — that is, it must be shown that the Coffins, charged as aiders and abettors, stood in a similar relation to the alleged crime as Mr. Haughey; that they approached it from the same direction and touched it at the same point. If, as matter of fact, in any of the transactions charged as criminal in this indictment, Mr. Haughey acted with one intent and the defendants acted with a different and unlike intent, then, as to that transaction, they are not guilty as charged in this indictment."

No. 48 is similar to No. 47, except that the words "stood in a similar relation to the alleged crime," contained in the third sentence of No. 47, are omitted in No. 48.

We held in our former opinion, 156-U. S. 446, that the language of the statute fully demonstrated the unsoundness of the contention then advanced, that no offence was stated in the indictment against the aiders and abettors, because in none of the counts was it asserted that they were officers of the bank or occupied any specific official relation to it.

The ruling then made establishes the error of the foregoing

requests to charge, and hence, practically, disposes of the questions arising under this heading. However, as counsel now contend that their former position was misunderstood and was not adequately met by the reasoning previously adopted, we add the following considerations: The contention now advanced admits that one not an officer of the bank may be, under some circumstances, an aider or abettor in violation of section 5209, Revised Statutes, but urges that in order to be such aider or abettor the person so charged, when not an officer of the bank, must stand in such relation to the recreant bank officer, or have such interest with him in other enterprises, "as that they may work together for the hurt of the bank for a common purpose." In other words, the argument substantially asserts that an essential element of the offence of aiding and abetting is the existence of a common purpose between the officer and the aider and abettor to promote or subserve the joint interest of the wrongdoers in enterprises in which they are mutually interested. But the statute nowhere requires that there should be a "common purpose" on the part of the principal and the aider and abettor to subserve their joint interests by the misapplication committed. It only requires that there should be a misapplication of the moneys of the bank with a joint intent to "injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association or any agent appointed to examine the affairs of such association." It is clear that the statute has been violated if the one charged with aiding and abetting is shown to have actually aided and abetted the officer of the bank in misapplying its funds, no matter whom the accused may have ultimately intended to benefit by his misconduct, provided, of course, there existed the intent to defraud enumerated in the act of Congress. In accord with this view the court properly instructed the jury that there must have existed in the minds of both Haughey and the defendants the wrongful intent stated in the law. The intent contemplated by counsel in the requested instruction was evidently the other and different one heretofore referred to, namely, the beneficial purpose to

be subserved or common interest to be promoted by the performance of the wrongful act. But, as we have said, it is not essential that the intent should, in this particular, have been coincident, provided there existed the intent which the law ordains.

The proposition upon which reliance is mainly placed is that the person charged as an aider and abettor "must stand in the same relation to the crime as the principal, approach it in the same direction, touch it at the same point." This language is taken from the opinion in *State* v. *Teahan*, 50 Connecticut, 92. In that case it was held that one who bought intoxicating liquors from another, the sale being illegal, was not an aider and abettor of the offence of unlawful selling within the meaning of a general statute, which provided that "every person who shall assist, aid, counsel, cause, hire or command another to commit any offence, may be prosecuted and punished as if he were a principal offender." The court said:

"The 'abetting' intended by it is a positive act in aid of the commission of the offence — a force, physical or moral, joined with that of the perpetrator in producing it. This is clear from the context, where aiding is classed with 'assisting,' 'causing,' 'hiring' and 'commanding.' The abettor, within the meaning of the statute, must stand in the same relation to the crime as the criminal, approach it from the same direction, touch it at the same point. This is not the case with the purchaser of liquor. His approach to the crime is from the other side. He touches it at wholly another point. It is somewhat like the case of a man who provokes or challenges a man to fight with him. If the other knocks him down, he has induced, but in no proper sense abetted, this act of violence. He has not contributed any force to its production. He touches the offence wholly on the other side. The purchaser of liquor, by his offer to buy, induces the seller of the liquor to make the sale; but he cannot be said to 'assist' him in it. The whole force, moral or physical, that went to the production of the crime as such was the seller's."

Separated from the context in which the sentence was used

by the Connecticut court, it becomes meaningless and confusing. The direction from which the parties must approach the transaction, that is, the intent to defraud, is accurately specified in the statute under consideration. The meaning which counsel affix to the sentence which they excerpt from *State* v. *Teahan, supra,* is illustrated by their assertion that it appears from the bill of exceptions that Haughey, the president, had no interest in the cabinet company for whose benefit the indictment alleges the misapplications and false entries were made, nor any interest in or relation to the defendants, and that neither the plaintiff in error nor any other person connected with or interested in the cabinet company, or any of the other companies, had any interest in the bank or with Haughey of any kind whatsoever. Conceding this to be so, the accused was none the less guilty of a violation of the statute if he aided and abetted in the misapplication of the funds of the bank with the intent specified in the law. The contention that if Haughey, the president, intended to benefit the bank by the transactions complained of, he therefore could not have had a common purpose, with the person receiving the money, to defraud the bank, amounts simply to the assertion that if the proof showed that there was no intent on the part of Haughey to defraud the bank, it was the duty of the jury to acquit. However, the real premise, upon which the whole argument rests, is that if the accused was guilty at all, he was guilty as a principal and not as an aider and abettor. But it is not necessary to give much time to the consideration of this claim, in view of the clear intent of Congress as expressed in the statute under review. It is evident that no matter how active the coöperation of third persons may have been in the wrongful act of a bank officer or agent, such third person is required to be charged as an aider and abettor in the offence and prosecuted as such. The primary object of the statute was to protect the bank from the acts of its own servants. As between officers and agents of the bank and third persons coöperating to defraud the bank, the statute contemplates that a bank officer shall be treated as a principal offender. In every criminal offence

there must, of course, be a principal, and it follows that without the concurring act of an officer or agent of a bank, third persons cannot commit a violation of the provisions of section 5209. If, therefore, a violation of the statute in question is committed by an officer and an outsider the one must be prosecuted as the principal and the other as the aider and abettor.

II. Under point 2, error is alleged to the refusal of the court to give the following requested instruction:

" 6. The fourth count of the indictment charges that Theodore P. Haughey, as president of the Indianapolis National Bank, did, on the 20th day of May, 1893, unlawfully, wilfully and feloniously misapply certain moneys of said bank in said count specifically named, to wit, the sum of $3272.29. The count does not charge that the defendants aided or abetted said Haughey in misapplying the same moneys which he is charged to have misapplied. Under these circumstances this count charges no crime against the defendants, and on this count you should not convict the defendants."

The proposition embodied in this request rests on the assumption that the aiding and abetting clause in the fourth count of the indictment does not refer to the identical misapplication which that count charges to have been committed by the president. In other words, that there is a want of identity between the offence which the accused is charged to have aided and abetted and the offence there averred to have been committed by the president. The count charges the president with having on the 20th of May, 1893, misapplied a specific and enumerated sum by then and there " paying and causing said sum to be paid out of the moneys, funds and credits of said association upon certain divers checks drawn upon said association by the Indianapolis Cabinet Company, which checks were then and there cashed and paid out of the moneys, funds and credits of said association, which said sum aforesaid and no part thereof was said Indianapolis company entitled to withdraw from said bank because said company had no funds in said association to its credit." The aiding and abetting clause charges that the accused did " on the 20th of

May, 1893, aid and abet said Theodore P. Haughey, as afore-said, to wrongfully, unlawfully, feloniously and wilfully mis-apply the moneys, funds and credits of said association, to wit," specifying a sum identical in amount with that referred to in the previous part of the indictment. The contention is that the word " said" preceding and the words " as aforesaid " following the name of Haughey, president, do not refer to the sum previously charged to have been misapplied, and, there-fore, there is a want of relation between the averred misappli-cation and the alleged aiding and abetting. When this case was previously before us substantially the same general com-plaint was made against all the counts of the indictment, the contention then being that the words " said " and " as afore-said " did not aver that those who aided and abetted knew that Haughey was the president of the bank, and, hence, the counts were bad. We said (p. 449) : " Without entering into any nice question of grammar, or undertaking to discuss whether the word ' said ' before Haughey's name, and the words ' as aforesaid ' which follow it, are adverbial, we think the plain and unmistakable statement of the indictment as a whole is, that the acts charged against Haughey were done by him as president of the bank, and that the aiding and abet-ting was also knowingly done by assisting him in the official capacity in which alone it is charged that he misapplied the funds." This reasoning is conclusive of the point now made. The words " said " and " as aforesaid " which we then con-sidered as sufficiently referring to the capacity in which the act was averred to have been committed in the first part of the indictment, also adequately connected the acts charged against the aider and abettor with the offence stated against the principal offender.

III. This point complains of the refusal to give the follow-ing instructions :

" 19. Evidence has been introduced upon the trial with reference to drafts drawn by the Indianapolis Cabinet Com-pany on the Tufts Cabinet Company and accepted in the name of the latter company, and it is claimed on behalf of the government that there never was any such organization

as said Tufts Cabinet Company, but that the same was wholly
fictitious. This evidence has been permitted to be introduced
before you for the purpose of throwing light upon the intent
of the defendants and of Theodore P. Haughey in connection
with the charge of wrongdoing by them in the various counts
of the indictment. This evidence can only be considered by
you for this purpose, as there is no charge in any count of the
indictment based upon this particular transaction, and the
light it may throw upon the intent of the defendants or
either of them or of said Haughey must depend upon all the
circumstances shown to have attended the transaction."

" 43. As you have been already told, the government in
this case is prosecuting the defendants for particular trans-
actions charged to have been unlawful and criminal, as spe-
cifically set forth in certain specific counts of the indictment.
Evidence has been introduced by the government of other
transactions between the Indianapolis Cabinet Company and
the Indianapolis National Bank and various other parties.
This evidence has been allowed to go before you solely upon
the question of intent and should be considered by you only
in so far as it may tend to illustrate the intent of Mr.
Haughey or of the defendants. Except for that purpose you
have nothing to do with other transactions than those
specifically charged and prosecuted under this indictment.
Except as illustrating such intent, the question of the law-
fulness or unlawfulness of such other transactions is one with
which you have nothing to do."

We think the instructions here requested were properly
refused because fully covered by the general charge of the
court. *Northern Pacific Railroad* v. *Urlin*, 158 U. S. 271,
277; *Grand Trunk Railway* v. *Ives*, 144 U. S. 408, 433;
*Erie Railroad* v. *Winter*, 143 U. S. 60, 74; *Ayers* v. *Watson*,
137 U. S. 584, 601, 603.

Repeatedly in the instructions given, the jury were told
that they could not find the defendants guilty, unless they
were satisfied beyond a reasonable doubt that Haughey and
the defendants had committed the specific criminal acts
alleged in the counts of the indictment which were sub-

mitted to them with the intent therein charged. Thus the court, in the opening of its charge, said: "You have nothing to do with the other counts of the indictment, which are withdrawn from your consideration." Again, in another portion of the charge: "The particular acts of misapplication described in the several specific counts of the indictment on trial before you must be established by the proofs as therein respectively charged." And yet further: "You are not authorized to find the defendants guilty of any other charge of aiding and abetting in the wilful misapplication of the moneys, funds and credits of said bank, except those specifically charged in the first twelve counts of the indictment now on trial before you, and also on the specific charges elected by the Government, as above stated, under the thirteenth, fourteenth, fifteenth and sixteenth counts of the indictment." Having thus repeatedly called the attention of the jury to the fact that they were confined in the determination of the guilt of the accused to the specific matters submitted to them, the court, on the subject of intention, also correctly instructed them that for this purpose and for this purpose alone they might consider the proof introduced as to other misapplications than those charged in the counts which were before them. For instance, the court observed: "In determining whether they had the criminal intent to deceive or defraud as charged, or whether they acted in good faith, you should take into consideration the situation of the parties, the course of business between them as well as between the cabinet company and the bank, and all the facts and circumstances in proof before you." We think there can be no doubt that the charge of the court as given, therefore, left no question in the minds of the jury that they could only find the defendants guilty upon the particular matters specified in the counts submitted to them, and that they could not find them guilty of a different misapplication from that charged, whether or not there was proof establishing such other misapplications.

IV. The fourth point alleges, as error, the refusal of the court to give the following requested instruction:

" 15. The intent on the part of Mr. Haughey in the alleged misapplications of the moneys of the bank to injure or defraud the bank is an essential ingredient of the offence charged against the defendants. In determining the question, therefore, of Mr. Haughey's intent, you should take into consideration the relation he bore to this bank, both as an officer and shareholder, and whether the evidence shows any motive on his part for defrauding or injuring the bank, and it is for you to say, in the light of all the evidence, whether Mr. Haughey, in letting the cabinet company have such moneys, did so with such intent. If the evidence does not satisfy you beyond a reasonable doubt of such intent, then the government's case is not made out. In determining this question you may consider whether Mr. Haughey was in any way benefited, or hoped to be benefited, by the loans or advances to the cabinet company; and, if you find from the evidence that there was no such benefit or hope thereof on the part of Mr. Haughey, such fact may be considered by you in determining whether there was any such intent as is charged, and, if the making of such loans and advances was under such circumstances shown by the evidence as would injure or tend to injure Mr. Haughey, that fact may be considered in like manner and for the same purpose."

The complaint is made that nowhere in the charges given did the court expressly inform the jury that they might consider, in determining the question of criminal intent, whether the evidence disclosed that the motive of personal gain induced Haughey to commit the offence charged. But the instruction requested, in the particular mentioned, was not upon the law of the case, but upon the inferences to be drawn from the evidence, a matter peculiarly within the province of the jury. The court did charge that the jury might look at all the proofs in the case in determining the question of guilty intent, and while it also instructed that it was not necessary for the commission of this offence that the officer of the bank who makes a wilful misapplication should derive any personal benefit or advantage from the transaction, the court added that : " When the moneys, funds or credits of the bank are

unlawfully taken from its possession and knowingly and wilfully misapplied, by converting them to the use of any person or company other than the bank, with the intention to injure and defraud, the offence described in the statute has been committed." So, also, the court elsewhere in its instructions to the jury said : " If loans and discounts are made by the president of a national bank in bad faith for the fraudulent purpose of giving gain or advantage to some other person or company, and not in the honest exercise of official discretion, the officer making them passes the line dividing honesty and dishonesty, and his action is criminal if done with intent to injure and defraud the banking association, and it so results."

The accused could not properly single out the absence of one of several possible motives for the commission of an offence, isolate it in an instruction from all the other facts of the case, and demand that the court instruct the jury as to the weight to be given this particular fact, independent of all the other proof in the case. The charge as a whole having correctly conveyed to the jury the rule by which they were to determine from all the evidence the question of intent, we think there was no error to the prejudice of the defendant in refusing the request which he asked.

V. This point alleges error in the refusal of the court to give two instructions requested by plaintiff in error, one to the effect that the allowance of merc. overdrafts was not of itself sufficient to show any criminal intent on the part of Haughey, and the other, that, notwithstanding that the statute forbids loans to any one person in excess of ten per cent of the capital stock, such loan, although unlawful, was not for that reason alone criminal. The first instruction referred to is, in substance, given in various parts of the charge of the court. Thus the court instructed the jury :

" On the counts for wilful misapplication the questions for you to determine are : Did Theodore P. Haughey, as president of the Indianapolis National Bank, knowingly and unlawfully and with intent to injure and defraud said bank in manner and in form as charged, wilfully misapply the moneys, funds or credits of said bank by cashing, discounting and paying for

the use and benefit of the said Indianapolis Cabinet Company, knowing it to be insolvent, out of the moneys, funds and credits of the bank without authority from its board of directors, any notes, drafts or bills of exchange drawn by and upon insolvent persons, firms and companies, knowing them to be insolvent, and knowing such notes, drafts or bills of exchange to be valueless, in manner and form as charged in either count of the indictment? If he did, he has committed the offence of wilful misapplication as charged in the count or counts of the indictment now on trial relating to that subject which you find to have been so proved."

The court also said :

"If Haughey and the defendants withdrew moneys from the bank for the use of the cabinet company by means of checks drawn by it on said bank when it had no funds or moneys on deposit against which to draw, if they acted in good faith, honestly believing that the cabinet company would be able to repay the same when required, they would not be guilty of the intent to defraud the bank as charged ; but, on the other hand, if they acted in bad faith and did not believe and had no reasonable ground to believe that the cabinet company could repay such overdrafts when required to do so, then they had no lawful right to make such overdrafts or allow them to be made."

We think the second requested instruction was also fully covered in the charge actually given.

VI. The refusal to give the following instruction was assigned as error :

"18. The counts of the indictment relating to misapplication charge a misapplication of the moneys of the bank. These charges of misapplication are not sustained by merely showing that the bank gave to the cabinet company credit to which it was not entitled, unless it is also shown that as a result of such credit the cabinet company was enabled to and did withdraw from the bank moneys of some kind, resulting in loss to the bank. Thus evidence of the giving by the cabinet company, and the receiving by the bank, of renewal paper upon which nothing was withdrawn from the bank, would not sustain

the charge of criminal misapplication of the credits of the bank."

There is no doubt of the soundness of the abstract principle which this request embodied. If the money of a bank be misapplied by paying it out on worthless paper, it is obvious that a subsequent renewal of such paper upon which nothing was actually obtained could not have misapplied the money of the bank. Whilst this is true in the abstract, the refusal to give, when requested, a correct legal proposition does not constitute error, unless there be evidence rendering the legal theory applicable to the case. *Stryker* v. *Goodnow*, 123 U. S. 527, and authorities there cited.

The bill of exceptions contains the following statement relative to the ninth count, to which it is asserted the instruction asked related:

Be it further remembered that there was evidence tending to show that the transactions mentioned in the ninth count of the indictment consisted solely of the taking up by the Indianapolis Cabinet Company of two drafts theretofore drawn by it upon customers and discounted by said bank, and which had not been paid or accepted by the drawees, the aggregate amount of said drafts being $3467.23, by a new draft drawn by said Indianapolis Cabinet Company on one of the drawees in the drafts taken up for the sum of $3467.23, and that there was evidence tending to show that the drawee in said last mentioned draft was, at the time the same was drawn and accepted by said bank, solvent and indebted to the cabinet company in an amount greater than the amount of said draft, for which said company had a right to draw.

"There was evidence tending to show that the drawee in said draft above mentioned was, at the time the same was drawn and placed in said bank, insolvent, and said draft was never forwarded for acceptance or collection, but was held by the direction of Theodore P. Haughey in said bank, and that said defendant knew that the drawee of said draft always refused to accept or honor drafts, and that he made all his settlements either in cash or by note, and that the indebtedness mentioned in said draft was afterwards settled by the

note of said drawee, but was not turned over to said bank, but was delivered by said defendant to other creditors. There was evidence tending to show that the notes which were claimed to have been given for said indebtedness were not executed until after the failure of the bank, and that the disposition to other creditors was made by Albert S. Reed."

From this statement it is impossible to determine whether there was any evidence tending to show a state of facts adequate to make the instruction which was refused pertinent, and there is no other matter in the bill of exceptions to which the legal principle stated could apply. It is true that counsel say that by the bill of exceptions it "appears that other transactions were based upon the renewals of paper merely without in any way depleting the funds of the bank." But the portion of the bill of exceptions which is referred to as supporting this statement relates solely to the evidence offered on the count alleging a false entry, and, therefore, in no way involves the other counts of the indictment which charged misapplication. We, therefore, find that error was not committed by the refusal in question.

VII. The refusal to give the following instruction was assigned as error: ·

"40. In order to warrant a conviction of the defendants as aiders and abettors of Mr. Haughey in the making of false entries, as charged in this indictment, it is not enough to show that the entries were false and that Mr. Haughey made them with the criminal intent charged, but it must also be shown by the evidence, beyond a reasonable doubt, that the defendants had knowledge of the making of such entries, and that they did acts aiding and abetting Mr. Haughey in making the same with like criminal intent. Proof of the fact that the defendants presented the paper covered by the false entry and received credit for it is not sufficient to warrant their conviction for aiding and abetting the making of the false entry on the books, unless some knowledge of or connection with the making of such false entry is brought home to them."

This instruction is fully covered in the following portion of the charge of the court, the giving of which is also alleged to have been error:

" If you are satisfied that Theodore P. Haughey did knowingly and purposely make or cause to be made the false entries as charged, you cannot find the defendants guilty as aiders and abettors unless you are satisfied that they with like intent unlawfully and knowingly did or said something showing their consent to and participation in the unlawful and criminal acts of said Haughey, and contributing to their execution."

The instruction is not open to the objection that the expression " unlawful and criminal acts," used in the last sentence, might have been understood by the jury as relating to unlawful and criminal acts of Haughey generally.

The court instructed the jury that an entry made knowingly and purposely in the books of the bank, with the intent to deceive or defraud, as charged, which represented as an actual transaction one which did not exist, or an entry knowingly and purposely made with the intent to deceive and defraud, which was false in a material part, constituted a false entry within the statute. It appeared that the entry, under the thirty-ninth count, related to six pieces of paper which were brought to the bank on May 29, 1893, aggregating the face value of $44,000, and the court instructed the jury as to these notes that " if the paper was never accepted or discounted by the bank, but was simply left with the bank as a mere memorandum and not as a deposit, and for the fraudulent purpose of enabling fictitious entries to be made on the books of the bank with the intent to deceive and defraud, such entry on the books of the bank would constitute a false entry." In the light of these instructions, the expression " unlawful and criminal acts " could only have been interpreted by the jury as having reference to the acts of Haughey attendant upon and connected with the making of the entry, such as the taking by him of the paper to be used as the supposed basis of the false credit.

VIII. This covers three assignments of error, (Nos. 59, 60, 61;) which assert error in the giving of the following instructions:

" It is further shown by the evidence that large sums of money were obtained from the bank by the Indianapolis Cabi-

net Company by means of notes, drafts and bills of exchange which were wholly or partially valueless.

"It is also proven that various sums of money were obtained from the bank by means of checks drawn upon it by the Indianapolis Cabinet Company, which were presented to and cashed by the bank out of its moneys and funds when said cabinet company had no moneys, funds or credits on deposit with said bank with which to pay said checks.

"It is also shown that the cabinet company and the various corporations affiliated with it organized by the defendants were during the whole period of time covered by the indictment insolvent."

It is claimed that these instructions assumed facts to have been proven which were in dispute, and also indirectly stated to the jury, as settled, propositions which were disputed and were those most earnestly contested in the case.

These criticised excerpts of the charge are contained in the latter portion thereof, and were part of a brief resumé of the salient evidence in the case. To guard against the danger that the jury might consider that there was a purpose to remove the facts from their consideration or control their judgment thereon, the court repeatedly instructed that the determination of the facts was, by law, in them vested.

Thus, immediately following the criticised portion of the charge, the court said : " Carefully weigh all the evidence in the case and from it, under the rules of law which I have given you, determine the guilt or innocence of the defendants. With you and not with the court rests the responsibility of finding and determining the facts. The views of the court on questions of fact are not controlling upon you."

Again, in the opening paragraph of the charge, it was said : "You are the sole judges of the facts and of what is proved, and any statements of fact made by the court are not controlling upon you. Such statements are intended to invite your attention to the matters of fact which the court deems important, and not for the purpose of controlling your judgment."

In the earlier portions of the charge it was especially left to the jury, when considering whether or not an offence had been

committed, to determine whether the money had been obtained by the cabinet company on worthless paper, or by payments made by the bank on checks of the company when it was insolvent and its account with the bank was overdrawn. The jury were also instructed at length with reference to the charge contained in the indictment, that divers persons, firms and corporations were insolvent. We give an extract from the charge on this subject:

"If you are satisfied that the Indianapolis Cabinet Company, or any other person, firm or corporation, alleged to have been insolvent, at the time charged, had not sufficient property or assets to pay its debts in full when wound up, then such person, firm or corporation was insolvent in manner and form as charged in the indictment."

Keeping in mind the repeated cautions given by the court to the jury, it is impossible to perceive how the language of the court in the matter excepted to could have been understood by the jury as binding them to accept, as controlling, the statements of the court regarding the facts.

IX. The giving of the following instruction was assigned as error No. 55:

"In order to make the defendants liable as aiders and abettors, as charged in the indictment, it is necessary that they should be proved to have done or said something showing their consent to or participation in the unlawful and criminal acts of Theodore P. Haughey, and contributing to their execution as charged in the indictment."

It is complained that the instruction was erroneous, because it assumes that Haughey had committed a criminal offence, and that the defendants were liable as aiders and abettors, if it was shown that they either consented to or participated in the unlawful and criminal acts of the president.

But prior to this portion of the charge the court directly instructed the jury that the guilt of Haughey was necessary to be established by the government. Following the instruction above quoted, the court also said:

"The burden of proving Haughey and the defendants

guilty as charged rests upon the government, and this burden does not shift from it.

" Haughey and the defendants are presumed to be innocent until their guilt in manner and form, as charged in some count of the indictment, is proved beyond a reasonable doubt. To justify you in returning a verdict of guilty, the evidence should be of such a character as to overcome this presumption of innocence and to satisfy each one of you of the guilt of Haughey and the defendants as charged to the exclusion of every reasonable doubt."

It is not possible that the jury could have supposed that the court intended, from the portion of the charge claimed to be erroneous, that the acts of Haughey were " to be accepted and treated by them as criminal acts."

So, also, the jury could not have been misled, by the use of the disjunctive " or," into supposing that the court instructed them that mere consent of the defendants to the unlawful and criminal acts of Haughey would be sufficient to sustain a verdict of guilty. The consent or participation was required to be such as "contributed to the execution of" the unlawful and criminal acts of Haughey charged in the indictment. From the entire context it is clear that the court required the jury to find participation as well as consent. For instance, the court in its charge said to the jury :

" If you are satisfied that Theodore P. Haughey did knowingly and purposely make or cause to be made the false entries as charged you cannot find the defendants guilty as aiders and abettors unless you are satisfied that they with like intent unlawfully and knowingly did or said something showing their consent to and participation in the unlawful and criminal acts of said Haughey and contributing to their execution."

X. This alleges error in the following portion of the charge of the court:

" If Haughey and the defendants withdrew moneys from the bank for the use of the cabinet company by means of checks drawn by it on said bank when it had no funds or moneys on deposit against which to draw, if they acted in good faith, honestly believing that the cabinet company

would be able to repay the same when required, they would not be guilty of the intent to defraud the bank as charged; but, on the other hand, if they acted in bad faith, and did not believe, and had no reasonable ground to believe, that the cabinet company could repay such overdrafts when required to do so, then they had no lawful right to make such overdrafts or allow them to be made."

But this instruction should be read in connection with the paragraph following, which is as follows:

"Every person is presumed to intend the natural and ordinary consequences of his own acts. Hence, if the natural and ordinary consequences of the acts of Haughey and the defendants, as shown by the proofs, were to injure and defraud the bank as charged, you would be authorized to find that such was their intent, if such intent is in harmony with the other proofs in the case."

It cannot be disputed that a bank president not acting in good faith has no right to permit overdrafts when he does not believe and has no reasonable ground to believe that the moneys can be repaid. And if, coupled with such wrongful act, the proof establishes that he intended by the transaction to injure and defraud the bank, the wrongful act becomes a crime.

XI. This embraces assignments of error Nos. 49 and 50, which allege error in the giving of the following instructions:

"If, however, the entry truly represents an actual *bona fide* transaction, then it would not constitute a false entry.

"But if the paper was never accepted or discounted by him for the bank, but was simply left with the bank as a mere memorandum and not as a deposit and for the fraudulent purpose of enabling fictitious entries to be made on the books of the bank with the intent to deceive or defraud as charged, such entry on the books of the bank would constitute a false entry."

These sentences were contained in the following paragraph of the charge of the court:

"An entry knowingly and purposely made on the books of the bank, with intent to deceive or defraud, as charged, which represents as an actual transaction, one which does not

and did not exist, or an entry knowingly and purposely made, with intent to deceive and defraud, as charged, which in a material part falsely and untruly represents an actual and existing transaction, would constitute a false entry within the meaning of the statute. If, however, the entry truly represents an actual *bona fide* transaction, then it would not constitute a false entry."

The objection to this portion of the charge is that it assumes that an entry is false unless it represents a transaction entered into in good faith and without fraud. It is contended that this instruction is within the condemnation of this court as expressed in its former opinion, 156 U. S. 463, where it was said:

"The exception reserved to the charge actually given by the court (on the subject of false entries) was well taken, because therein the questions of misapplication and of false entries are interblended in such a way that it is difficult to understand exactly what was intended. We think the language used must have tended to confuse the jury and leave upon their minds the impression that if the transaction represented by the entry actually occurred, but amounted to a misapplication, then its entry exactly as it occurred constituted 'a false entry;' in other words, that an entry would be false, though it faithfully described an actual occurrence, unless the transaction which it represented involved full and fair value for the bank. The thought thus conveyed implied that the truthful entry of a fraudulent transaction constitutes a false entry within the meaning of the statute. We think it is clear that the making of a false entry is a concrete offence which is not committed where the transaction entered actually took place, and is entered exactly as it occurred."

The objection is not meritorious. The trial court carefully distinguished between an entry based upon an actual discount of paper and credit predicated thereon, and a credit not representing an actual deposit or discount. The expression *bona fide* was used in the sense of "real," and but emphasized the word "actual." Nor is there force in the suggestion that the instruction "must have tended to confuse the jury and

leave upon their minds an impression that if the transaction represented by the entry actually occurred, but amounted to a misapplication, then its entry, exactly as it occurred, constituted a false entry."

It is claimed that under the proof these instructions were wholly irrelevant. Reliance is placed upon a statement in the bill of exceptions " that the evidence showed that all the paper upon which the credit mentioned in said thirty-ninth count was based was retained in said bank as a part of its assets until the same matured, when it was renewed by other paper of the same kind, and again renewed from time to time as it matured, until said bank failed, at which time said paper, so renewed, was in possession of said bank as a part of its assets and passed as such into the possession of the receiver, by whom it was held as a part of the indebtedness of the cabinet company to said bank, secured by the mortgage executed (to Haughey as trustee for said bank) by said cabinet company to secure the indebtedness of said cabinet company to said bank."

But this is entirely consistent with the claim that the original paper " was simply left with the bank as a mere memorandum, and not as a deposit," etc. The fact that other notes were substituted for this paper does not necessarily import that the original transaction was an actual one if the notes were originally given to the bank as a mere pretext to enable the false entry to be made, and the subsequent renewals were equally unreal and made for a like purpose. The receiver was empowered, finding them in the hands of the bank, to retain them as a part of its assets. Prior to the statement in the bill of exceptions, which we have quoted, the following recital appears: "It was claimed on behalf of the government, and evidence was by it introduced tending to show, that the paper was not *bona fide* paper, representing the value for which the same was credited or any substantial value, and that said paper was not actually discounted by said bank or actually received as a genuine deposit, but was only received as a memorandum deposit to serve for the time being only, for the purpose of giving the Indianapolis Cabinet Company an apparent credit upon the books of the bank, which in fact

it did not have, and that said entries represented no actual transactions whatever." We think this extract clearly indicates that the charge as given was relevant to the issue.

XII. This heading alleges error in overruling the motion in arrest of judgment. We do not deem it necessary to consider it at length. It is predicated on the assertion that six of the seven counts upon which conviction was had were bad, because it alleged that the bank had been " heretofore " created and organized under the laws of the United States. If we assume that the word should have been " theretofore " in order to make it certain that prior to the finding of the indictment the association had been incorporated, and if we further assume that the allegation as to the incorporation of the bank was material, the averment was only an imperfect statement of that which the law implies to be true after verdict. Wharton Crim. Plead. Ev. § 760. Under this heading it is moreover contended that the thirty-ninth count was defective, because the principal offender was charged with having made the false entries with the intent to injure and defraud the bank, and also with the intent to deceive any agent appointed and any agent or agents who might thereafter be appointed by the Comptroller of the Currency to examine the affairs of the association, whilst the aiders and abettors were charged only with having had an intent to deceive the agent appointed by the Comptroller. The answer is self-evident. It was wholly immaterial that the principal offender should have had several intents, provided the principal and the aider and abettor were both actuated by the criminal intent specified in the statute. The alleged additional intent on the part of the principal offender might well have been treated as surplusage ; besides, it appears from the recital in the bill of exceptions that there was evidence tending to show that the purpose of Haughey in causing the false entry to be made was to deceive any officer who might be sent by the Comptroller of the Currency to make an examination of the bank, and that the paper upon which the entry was made, as stated in the count, was furnished by the defendant Coffin at the request of Haughey with a like intent.

. This completes the review of all the very numerous grounds of error which have been pressed upon our consideration, and the result is that we find that they are all without merit.

The judgment is, therefore,

*Affirmed.*