378

## UNITED STATES v. DARBY.*

### No. 16666.

District Court, D. Maryland.

Jan. 14, 1933.

Simon E. Sobeloff, U. S. Atty., and Charles G. Page, Asst. U. S. Atty., both of Baltimore, Md.

Lucien H. Mercier, of Washington, D. C., for defendant.

WILLIAM C. COLEMAN, District Judge.

The single question before the court is whether the following allegations as set forth in the indictment of the defendant, John G. Darby, assistant cashier of the Montgomery County National Bank of Rockville, Md., are sufficient to meet the requirements of the statute defining the crime of false entry by officers, employees, etc., of national banks. 12 USCA § 592. There are sixteen counts in the indictment, all of which charge substantially the same offense, but with respect to different promissory notes. Therefore, suffice it to quote the following from the first count: " * * * The said John G. Darby, by virtue of his official relation as such Assistant Cashier of the said National Bank, and by virtue of the power of control, direction and management which he possessed, heretofore, to wit, on the 28th day of January, 1931, at Rockville, feloniously, knowingly and wilfully, and with intent then and there to injure and defraud the said National Bank, did

*Judgment reversed 53 S. Ct. 573, 77 L. Ed. ——.

make and cause and procure to be made in a certain book then and there belonging to and in use by the said National Bank in transacting its said banking business, and then and there designated and known as the Discount Register, Volume No. ———, at Register No. 53006, a certain entry, which said entry was as follows:

"Bessie D. Darby      ren
"Rockville, Md.

—which said entry aforesaid, made in said book, was then and there false in that it purported to show that a note on which J. G. Darby appeared as maker, dated January 20, 1931, in the sum of $419.15 due on March 20, 1931, which had then been accepted by the said National Bank for discount, and which was then in the possession of the said National Bank, was also signed by the said Bessie D. Darby of Rockville, Maryland, as maker, whereas in fact, as he, the said John G. Darby then well knew, the said note had not been executed by the said Bessie D. Darby as maker as aforesaid, and the said signature purporting to be the signature of the said Bessie D. Darby on the said note was a forgery."

The defendant has demurred to the indictment. It must be assumed from the allegations of the indictment as above set forth, and from the absence of anything to the contrary appearing in the indictment, that the promissory notes in question came properly into the possession of the bank through discount transactions made in the regular course of business, and that the defendant, acting in his capacity as assistant cashier, listed the notes as part of the bank's assets. The government claims that such a listing, made with knowledge that one of the signatures on the note was a forgery, amounted to a false entry within the meaning of the statute, the pertinent provisions of which are as follows: "Any officer, director, agent, or employee of any Federal reserve bank, or of any member bank as defined in sections 221 to 225 of this title, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of such Federal reserve bank or member bank, or who, without authority from the directors of such Federal reserve bank or member bank, issues or puts in circulation any of the notes of such Federal reserve bank or member bank, or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree, or who makes any false entry in any book, report, or statement of such Federal re-

serve bank or member bank, with intent in any case to injure or defraud such Federal reserve bank or member bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such Federal reserve bank or member bank, or the Comptroller of the Currency, or any agent or examiner appointed to examine the affairs of such Federal reserve bank or member banks, or the Federal Reserve Board; and every receiver of a national banking association who, with like intent to defraud or injure, embezzles, abstracts, purloins, or willfully misapplies any of the moneys, funds, or assets of his trust, and every person who, with like intent, aids or abets any officer, director, agent, employee, or receiver in any violation of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof in any district court of the United States shall be fined not more than $5,000 or shall be imprisoned for not more than five years, or both, in the discretion of the court." 12 USCA § 592.

It will be seen that the statute covers numerous separate offenses; namely, embezzlement, abstraction or misapplication of funds, unauthorized issuance of certificates of deposit or other documents, and, lastly, making false entries. We see no escape from the conclusion that defendant's demurrer must be sustained on the authority of Coffin v. United States, 156 U. S. 432, 15 S. Ct. 394, 39 L. Ed. 481, Id., 162 U. S. 664, 16 S. Ct. 943, 40 L. Ed. 1109, Agnew v. United States, 165 U. S. 36, 17 S. Ct. 235, 41 L. Ed. 624, and Cooper v. United States, 13 F.(2d) 16, the latter a decision of the Circuit Court of Appeals for this circuit, because the principle laid down in those cases is believed to be directly applicable to the facts in the present case. While, from aught that appears from the allegations of the indictment, what defendant did amounted to misapplication of funds, he is not charged with this, but solely with the making of false entries which is a separate, concrete offense, and, if we properly interpret the aforegoing decisions, is not committed where, as here, the transactions of which he made entries actually occurred and were entered exactly as they occurred.

In the Coffin Case, supra, the Supreme Court reversed a conviction for false entry, finding that the lower court had erred in charging the jury, in effect, that: " * * * If the transaction represented by the entry actually occurred, but amounted to a misapplication, then its entry exactly as it occurred constituted 'a false entry.' " 156 U. S. 432, 463, 15 S. Ct. 394, 406, 39 L. Ed. 481. The facts were that the defendant, acting as an officer of a national bank, received the bill of exchange of a depositor and credited it with that amount, allowing it to draw checks against such credit. Thereupon, although he knew the bill to be worthless and made no effort to collect it, he entered it upon the books of the bank as an asset. Mr. Justice White, in the course of his opinion, said at page 463 of 156 U. S., 15 S. Ct. 394, 406: "While we consider the charges asked were in some respects unsound, yet the exception reserved to the charge actually given by the court was well taken, because therein the questions of misapplication and of false entries are interblended in such a way that it is difficult to understand exactly what was intended. We think the language used must have tended to confuse the jury, and leave upon their minds the impression that if the transaction represented by the entry actually occurred, but amounted to a misapplication, then its entry exactly as it occurred constituted 'a false entry'; in other words, that an entry would be false, though it faithfully described an actual occurrence, unless the transaction which it represented involved full and fair value for the bank. The thought thus conveyed implied that the truthful entry of a fraudulent transaction constitutes a false entry, within the meaning of the statute. We think it is clear that the making of a false entry is a concrete offense, which is not committed where the transaction entered actually took place, and is entered exactly as it occurred."

To the same effect, upon similar state of facts, are Agnew v. United States, and Cooper v. United States, supra. Nevertheless, the government attempts to distinguish these cases from the present case on the ground that no forgery existed in those cases, but merely known insolvency of the persons whose true signatures appeared on the paper. While, to be sure, this is a factual difference, we do not believe that it permits of a different result when the language and intent of the statute are correctly applied. Such a refinement in the definition of the term "false entry" is not permissible. The word "false" denotes something that is not genuine or real; artificial; counterfeit. An "entry" is defined as the "act of making or entering a record; a setting down in writing of particulars, as of a transaction; as an entry of a sale; also that which is entered; an item." Webster's International Dictionary. It is argued that when an entry is made of the note of an insolvent,

everything represented as true is true; that the bank possessed such a note which is in fact signed by the person whose signature appears on the note; that whereas, on the other hand, when an entry is made of a forged note, the representation is untrue; that the bank does not possess a note signed by the person whose name appears thereon. But the weakness of this narrow distinction is that the bank's employee is not charged with representation beyond existence of the actual document which he copies. As has already been pointed out, the act seeks to punish offenses of various and distinct kinds, of which the making of false entries is merely one. We do not believe that Congress intended this last of a series of offenses to be so broad as to include the others. The crime of "false entry" must have been treated as a separate crime, through punishment for which at least one main purpose was to reach bank officials or employees guilty of padding their accounts, with the purpose of deceiving their fellow officers or employees, and bank examiners, by making entries of transactions which in fact never occurred; acts which in themselves, and without more, would not otherwise have been criminal.

The records of the bank are not intended to furnish the history or the origin of paper actually passing through the bank, whether received in good or bad faith, whether valuable or worthless for whatever reason. In the Coffin Case, supra, the Supreme Court said "that the truthful entry of a fraudulent transaction" does not constitute a false entry within the meaning of the statute. Thus, unless we can say that in the present case there was in fact no transaction to which the bank was a party, there can be no sound distinction on principle between the truthful entry of a transaction, fraudulent because the evidence of indebtedness was accepted when known to be worthless, and one fraudulent, because the evidence of indebtedness was known to contain a forged signature. Clearly, there was a "transaction" in the present case because, as alleged in the indictment, the note was accepted and discounted by the bank, and contained, in addition to the forged signature, the name of the defendant; a valid signature from aught that appears. See, also, Dow v. United States (C. C. A.) 82 F. 904; United States v. Young (D. C.) 128 F. 111; Twining v. United States (C. C. A.) 141 F. 41.

Whether for one reason or another, as a result of the conclusion here reached, it may not be possible to bring the alleged unlawful conduct of the defendant within the language of one or more of the other provisions of the statute, is a matter with which we are not here concerned. The sole problem presented is one of construction. It is not the function of the court to strain the language of a statute unless there is clear justification for so doing, regardless of the practical arguments that may be advanced therefor.

Accordingly, the demurrer will be sustained.