UNITED STATES of America, Plaintiff,

v.

**Fred M. KELLERMAN, Defendant.**

**Crim. No. 82–00043–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Jan. 25, 1983.

David W. Mullen, Charles R. Beller, III, Christiansburg, Va., Donald R. Mullins, Tazewell, Va., for plaintiff.

Jean B. Weld, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

On August 13, 1982, after five days of testimony and the introduction of a large number of documents, this court found Fred M. Kellerman guilty of the misapplication of bank funds, under 18 U.S.C. § 656 (1977) which was Count Twenty-Eight of a thirty-two count indictment. Kellerman was acquitted on Counts One through Twenty-Six and the remaining counts were dismissed. This action is presently before the court on the defendant's motion for vacation of the court's prior ruling and a judgment of acquittal or for a new trial. The defendant raised several grounds in support of his motion, however, the court finds merit in only one ground, that being that the evidence in this case fails to show a misapplication of bank funds.

The court recited the facts of this case in a lengthy bench opinion and will, therefore, repeat only those facts pertinent to the misapplication of bank funds charge. Fred Kellerman, a native of Bluefield, Virginia, returned to his hometown to assume the presidency of the Southwest Virginia National Bank in 1975, after approximately fifteen years of banking experience in other localities in Virginia. In late 1979, Kellerman began authorizing and managing coal loans to Cowan Associated Mining Company, Inc., a coal venture operated by contract miner William Sopsher. By February of 1980, the bank, at Kellerman's behest, had "covered" accumulated overdrafts of Cowan of over $90,000. Kellerman agreed to lend Cowan $165,000 on a ninety-day note to cover the overdrafts and other expenses.

On February 21, 1980, Kellerman presented to the Board of Directors of the bank a $165,000-check drawn on N–S Corporation, a mining venture, as security on the Cowan loan. N–S Corporation was owned by Kennie Childers, Walt Childers and Allen Glick. The check, which is described in an "escrow letter" from Walt Childers to Cowan Mining, was "to be held by [Southwest Virginia National Bank] pending final negotiations and closing of transaction for prospective coal lease and related equipment which you

control or will control in the near future. By copy of this letter, said bank is directed to deliver said check back to you upon certification of your assignment to us [of certain property] . . . ." At the February 21 Board meeting, Kellerman told the Board that Childers had agreed to purchase Cowan in the event that a substantial curtailment was not made at the end of ninety days. Kellerman also told the Board at that time that he would place the check in an escrow account, but never did so.

About the time that the ninety-day note matured, the latter part of May or early June, Childers called Kellerman and said that he needed the check back for his "Wise County operation regarding the N–S Corporation." Kellerman returned the check to Childers. Not only did Kellerman not have the Board's authorization to return the check, the Board was not even informed that the check had been returned.

In the court's bench opinion of August 13, 1982, the court found from the evidence that the check drawn on N–S Corporation was worthless in that N–S Corporation did not have sufficient funds to cover the amount of the check during the time it was in the bank's possession. However, the court further found that since members of the Board and Kellerman testified that the check did have value, and since Kellerman deceived the bank directors concerning disposal of the check and its value, there was evidence of intent on his part to misapply bank funds, and therefore, found him guilty.

The only meritorious ground on which the defendant's motions have been made in this case is that the evidence fails to show a misapplication of bank funds. This argument is based upon the fact that N–S Corporation did not have sufficient funds to cover the $165,000 check when the check was presented to the Board by Fred Kellerman on February 21, 1980 or at any time prior to Kellerman's returning the check to Childers. Since the check was worthless, it did not represent funds of the Bank and, therefore, could not be the subject of misapplication. Count Twenty-Eight of the in-

dictment alleges that Kellerman "wilfully and knowingly did misapply and abstract the sum of $165,000 of the monies and funds of the Bank in that Fred M. Kellerman disposed of and converted [a] check drawn on an N–S Corporation account for the amount of $165,000 which was received by and intended by the Board of Directors of said Bank to be placed in escrow as collateral on a $165,000-loan approved February 21, 1980 to Cowan Mining Company, Inc., a violation of 18 U.S.C. § 656 and 2."

The section of the Code under which the defendant is charged under this count, reads in pertinent part, as follows:

> Whoever, ... wilfully misapplies any of the monies, funds, or credits of such bank or any monies, funds, assets, or securities entrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 and imprisoned not more than five years, or both.

Therefore, the specific charge against Kellerman in this case is that by disposing of the $165,000-check, that is, by returning it to Mr. Childers on behalf of the N–S Corporation, he had misapplied funds of the Bank in that he did not have the authorization to return the $165,000-check. Thus, Kellerman is not charged with misapplying the funds of the Bank at the time that he came before the Board of Directors and obtained the $165,000-loan to Cowan Mining Company, nor any of the events surrounding the making of the loan. The facts concerning the making of the loan are only of importance for the purpose of determining the intent of Kellerman.

It has been held that no criminal misapplication of funds occurs when the so-called "funds" consists of worthless paper. *Batchelor v. United States,* 156 U.S. 426, 15 S.Ct. 446, 39 L.Ed. 478 (1895); *Coffin v. United States,* 162 U.S. 664, 16 S.Ct. 943, 40 L.Ed. 1109 (1896); *United States v. Michaels,* 456 F.Supp. 335 (D.N.J.1978); *cf. Johnson v. United States,* 95 F.2d 813 (4th Cir.1938) (stating that "misapplication" is something more than irregular or improper use of, the bank's funds, some conversion of funds is necessary to support a conviction). In *Batchelor,* the bank president engaged in a scheme whereby he cancelled the indebtedness of an insolvent debtor of the bank by substituting other worthless notes under the pretense of paying off the prior uncollectible indebtedness. The court stated:

> This amounts only to the substitution of worthless notes for other notes equally worthless without so far as the indictment shows, the payment of any money or other consideration whatever.

156 U.S. at 431, 15 S.Ct. at 448.

In *Michaels,* the court interpreted Section 656 to mean that misapplication of funds is not proven unless there is proof of either a temporary withdrawal from the bank's control or possession or by temporary deprivation of the bank's use and benefits thereof amounting to more than a renewal or substitution of worthless paper. 456 F.Supp. at 335. Following the reasoning of *Batchelor* and *Michaels,* in this case, if the court concludes that at the time the check was returned by Kellerman to the N–S Corporation, the check was worthless, then funds of the bank were not misapplied.

There was evidence presented in this case that the Board of Directors and Kellerman believed that N–S Corporation had sufficient funds to cover the check and, therefore, that the check was "good" and represented funds of the Southwest Virginia National Bank. Despite the belief of Kellerman and the Board, there was also evidence in this case that N–S Corporation did not have sufficient funds in its bank to cover the check at any time the check was in possession of Kellerman.

In the bench opinion in this case, the court discussed the validity of the $165,000-check and stated that the Board of Directors believed that the $165,000-check was good and Kellerman also testified and insisted that the $165,000-check was good and valid funds of the bank. The court, at that time, pointed out that the evidence in the case showed that the N–S Corporation at the time the check was issued did not have sufficient funds in the bank to cover the

check and at no time that the check was in the possession of the bank were there funds in the N–S Corporation's bank account to pay off the $165,000-check and there does not appear to be any question but that the $165,000-check would have been returned.

The mere fact that there were not funds to cover the check does not necessarily mean that the check was valueless. Had the bank attempted to cash the check and discovered that it was drawn on insufficient funds, perhaps it could have obtained a judgment on the underlying obligation and perhaps the judgment could have been collected. Therefore, further analysis of this transaction is necessary to determine whether or not the check represented something of value to the bank or whether it was indeed a worthless piece of paper at the time it was returned by Kellerman to the N–S Corporation.

The value of the check to the Southwest Virginia National Bank depends largely upon the status of the Bank, that is, whether or not the Bank qualified as a holder in due course. Code of Va. § 8.3–302 (1977). If the Bank was a holder in due course, it took the check free of all defenses and claims to the check, Code of Va. § 8.3–304 (1977), and had recourse against N–S Corporation, the maker, for the amount of the check in the event that the check was indeed dishonored for insufficient funds. Code of Va. § 8.3–122 (1977).

Before the bank could be a holder in due course, it must first be established that the bank was a holder. Code of Va. § 8.3–302 (1977). In order for the bank to be a holder, the check must have been negotiated to the bank. Code of Va. § 8.3–202 (1977). The court finds that the evidence is deficient on this point. It is unclear from the evidence whether the check was payable to Cowan Mining or whether it was payable to the bank. If the instrument was payable to Cowan Mining Company, it was negotiated by a delivery to the bank, together with an endorsement by Cowan Mining Company. It must be assumed that Cowan Mining Company would have endorsed the check if Cowan intended the check to pay the debt

that it (Cowan) owed the bank. If the check was payable to the bank, it was negotiated by delivery. Code of Va. § 8.3–202 (1977). If the bank were the payee, it could still hold the status of a holder in due course. Code of Va. § 8.3–302(2) (1977). The government has failed to prove that the check was negotiated and that the bank was a holder, much less a holder in due course. Therefore, the court must assume that the bank was not a holder in due course. As previously stated, in order for the bank to take the check free from all claims and defenses, thus entitling the bank the right to collect the amount of the check from N–S Corporation in the event of dishonor, it must have been a holder in due course. If the bank could not establish its status as a holder in due course, the instrument was indeed valueless paper because of N–S Corporation's defenses to the check.

The bank, through its agent Kellerman, knew that the check was accompanied by the so-called "escrow letter" which set forth the consideration for which the check was issued. As recited earlier, the check was in consideration of a prospective coal and equipment lease from Cowan to N–S Corporation. Cowan was to assign to N–S "a valid, marketable leasehold estate of [Cowan's] property near Brewsterdale, McDowell County, West Virginia ...." The Bank was to hold the check in escrow pending the finalization of the leasing transaction. The evidence in this case revealed that Cowan Mining Company never owned any marketable leasehold estate property near Brewsterdale, McDowell County, West Virginia. Thus, there was never any lease of coal and equipment from Cowan to N–S Corporation; therefore, N–S Corporation never received consideration for the check and this defense would have been valid against the bank.

Further, the court finds that the letter clearly demonstrates that the check was not put in the bank's possession as security for a loan to Cowan Mining Company. The letter does not even imply that the check is to be held in escrow for any transaction related to the bank's purpose. The letter

merely directs the bank to hold the check in escrow pending a transaction of which the bank was not a party. The fact that the bank treated the check as security to be held in escrow pending Cowan paying off its ninety-day loan, does not impose any duty upon N–S Corporation to secure Cowan's obligation. Even had Cowan been entitled to the check, this entitlement would not have given the bank any rights in the check under the present facts.

In summary, the $165,000-check was valueless paper to the bank in two respects. If the bank had acquired rights in and attempted to cash the check, they would have been unable to do so because of N–S Corporation's lack of sufficient funds. Additionally, had the bank attempted to sue N–S Corporation, because the bank was not a holder in due course, they would have been subject to N–S Corporation's defense of lack of consideration as well as the defense that N–S Corporation had never obligated themselves to the bank in any way with regard to the Cowan loan.

The court must conclude that the check was a meaningless, valueless piece of paper. It was merely a false simulacrum of security for the bank at all times as well as at the time Kellerman returned the check to Childers and N–S Corporation. Valueless paper that the bank had no right in cannot be considered funds of the bank. The court is therefore of the opinion that the defendant Kellerman is not guilty of the precise offense with which he is charged; that is, of misapplying funds of the bank when he returned the $165,000-check.

Other issues have been raised in this case, however, the court considers those issues to be without any merit whatsoever. However, for the reasons stated in this opinion, the court hereby vacates its prior ruling and grants the defendant's motion of acquittal as to Count Twenty-Eight of the indictment. Accordingly, an Order shall be entered finding the defendant not guilty and entering a judgment of acquittal on all charges contained in the indictment.