**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William T. MANDERSON, Defendant-Appellant.**

**No. 74–3452.**

United States Court of Appeals, Fifth Circuit.

April 11, 1975.

Floyd M. Buford, Macon, Ga., for defendant-appellant.

Ronald R. Knight, U. S. Atty., Charles T. Erion, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before GOLDBERG and RONEY, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge:

Appellant, William T. Manderson, was Vice-president of The Georgia Company, a branch of The Columbus Bank and Trust Company, limited in its functions to mortgage banking.[1]

Appellant was charged in a two count indictment with making or causing to be made a false entry in the form of a check entered into a checkbook of The Georgia Company in violation of 18 U.S.C. § 1005,[2] and with the misapplica-

---

1. The deposits of the Columbus Bank and Trust Company were insured by the Federal Deposit Insurance Corporation.

2. "Whoever makes any false entry in any book, report, or statement of such bank with

intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance

tion of Eight Hundred Dollars which had been entrusted to the custody and care of The Georgia Company in violation of 18 U.S.C. § 656. A jury found appellant guilty of making a false entry but acquitted him of the misapplication of funds. He was sentenced to one year's unsupervised probation.

Appellant's motions to dismiss the false entry count and for an acquittal thereon were overruled. He appeals. We reverse with directions.

The pertinent facts presented by the record are as follows: Carl L. Horton's house was extensively damaged by fire on December 13, 1973. The Federal National Mortgage Association held a mortgage upon the house. The mortgage was being serviced by The Georgia Company. Appellant handled the claim for the loss with an insurance adjuster, who obtained a repair estimate of $9,050.39 and recommended that the insurer pay $8,499.96 in settlement of the claim. The settlement proposed was accepted and a check was issued to Horton covering the settlement.

Horton becoming aware of the fact that his insurance did not include coverage on his furniture and that the cost of the repairs would be more than the proceeds of the insurance asked appellant if a friend of his, James N. Reese, a contractor, could do the work as Reese might be able to save him some money. The contract for repairs was let to Reese. When work began Horton deposited the insurance check in an escrow account of The Georgia Company in The Columbus Bank and Trust Company, awaiting the completion of the repairs.

Appellant kept close check on the repairs that were being made and kept notes on the savings being made on the job. Ultimately Reese was able to save $2,176.00 for Horton. On March 15, 1974, Reese went to The Georgia Company to turn in the keys to the house to

appellant. According to Reese, Manderson, at that time, produced a detailed list of what he believed to be savings made by Reese and demanded $1,000.00. Before attempting to comply with the demand, Reese notified The Columbus Bank, which requested assistance from the Federal Bureau of Investigation. The Bank supplied Reese through an F.B.I. agent with $1,000.00 in marked bills. When Reese went to pick up the check he had further negotiations with appellant, who accepted $800.00, which was later recovered.

Appellant's version of the facts differed markedly from that of Reese. He testified that Reese told him that he had made money on the job and appreciated appellant's help; that Reese was hopeful of obtaining more insurance repair work, which appellant controlled, and that he would like to give appellant $800.00 to spend on his vacation.

Appellant delivered to Reese a check of The Georgia Company dated March 19, 1974, drawn on the escrow account by James W. Cloud and William T. Manderson in the exact amount of the escrow deposit of $8,499.96 payable to Reese Construction Company and Carl L. Horton. The checkbook stub correctly reflected the date, the payees, for what the check was issued, its application to the escrow account, the account number, and the amount. There was no false entry unless it can be said that appellant's attempt to enrich himself at the expense of Reese and Horton rendered it such. There was no attempt to defraud The Georgia Company or the Bank and neither was defrauded. Appellant correctly reflected the transaction in the books of the Bank.

The aim of the false entry statute "was to give assurance that upon an inspection of a bank, public officers and others would discover in its books of account a picture of its true condition." United States v. Darby, 289 U.S. 224,

Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

226, 53 S.Ct. 573, 574, 77 L.Ed. 1137; United States v. Corbett, 215 U.S. 233, 241, 242, 30 S.Ct. 81, 54 L.Ed. 173.

■ Appellant relies upon Coffin v. United States, 156 U.S. 432, 462, 15 S.Ct. 394, 39 L.Ed. 481 (later opinion 162 U.S. 664, 16 S.Ct. 943, 40 L.Ed. 1109); Laws v. United States, 10 Cir., 66 F.2d 870; Twining v. United States, 3 Cir., 141 F. 41; and United States v. Young, (M.D. Ala.), 128 F. 111, while appellee asserts that its position is sustained by Agnew v. United States, 165 U.S. 36, 52–53, 17 S.Ct. 235, 41 L.Ed. 624; United States v. Darby, 289 U.S. 224, 53 S.Ct. 573, 77 L.Ed. 1137; Morse v. United States, 2 Cir., 174 F. 539, cert. den. 215 U.S. 605, 30 S.Ct. 406, 54 L.Ed. 346; and Billingsley v. United States, 8 Cir., 178 F. 653.

In *Coffin* the Court stated: "We think that it is clear that the making of a false entry is a concrete offense which is not committed where the transaction entered actually took place, and is entered exactly as it occurred." Of like tenor are *Laws*, *Twining* and *Young*, where *Coffin* is cited as sustaining those decisions.

The decision in *Agnew* was grounded upon an entry of $3400 made to the officer's credit on the books of the bank by means of a false deposit slip. In *Darby*[3] the entries related to discounted promissory notes bearing a known forged signature of a co-maker or endorser. In *Morse* the entries in the books of the bank showed loans to individuals on the security of stock deposited as collateral when in fact the transactions were illegal purchases of stock by the bank in the name of irresponsible clerks who knew nothing of the merits of the transactions. In *Billingsley* the Comptroller had disapproved a note of an officer of the bank

as an asset. There was a sham sale to another bank and a false entry made of the receipt of funds. In a second transaction to cover an overdraft of the same officer, the defendant and the officer caused an unauthorized note to be executed by a corporation of which they were officers. The defendant pretended to discount the note and to place the proceeds to the credit of the officer. The facts recited clearly distinguish those cases from the facts presented in this case.

The entry made on the books of The Georgia Company was in no respect lacking in verity. It was the very entry that should have been made had there been no later effort to extort. The sum for which the check was drawn was rightfully due Reese and Horton and it was appellant's duty to draw it and enter it precisely as it was drawn and entered. Although the presence of the funds in the possession of Reese and Horton motivated the scheme to exact money from them, the entry, correctly made, did not conceal anything from them or The Georgia Company. The entry did not represent what was not true or did not exist. It cannot be a false entry to make an entry on the books of the bank which correctly reflects the transaction and was so intended. That part of § 1005 which creates the offense of making "any false entry" a crime was not designed to cover other criminal breaches of duty, *Young, supra*, and this Court declines to so rule.

This cause is reversed and remanded with direction to dismiss the indictment and to discharge appellant.

Reversed and remanded.

---

**3.** In *Darby* the court noted that *Coffin* was to be read in the light of a later opinion in the same case (162 U.S. 664, 16 S.Ct. 943, 40 L.Ed. 1109) and of the still later opinion in *Agnew* saying "whether the conclusion would be the same if the signature had been genuine, but the signer had been known to be insolvent, or a man of straw . . . there is no occasion to determine."