**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Samuel L. HARDIN,
Defendant–Appellant.**

**No. 87–5783.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1988.

Decided March 8, 1988.

Jerry W. Laughlin (argued), Greeneville, Tenn., for defendant-appellant.

J. Edgar Schmutzer (argued), Guy W. Blackwell, Asst. U.S. Atty., Greeneville, Tenn., for plaintiff-appellee.

Before MILBURN and GUY, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant, Samuel Hardin, appeals from a jury verdict finding him guilty of making false entries in the Board of Directors' minutes of the Watauga Valley Bank and making false entries in the books, reports, and statements of the First Security Bank in violation of 18 U.S.C. § 1005 (1982).[1]

## I.

Samuel Hardin is the former president of the First Security Bank in Erwin, Tennessee and the Watauga Valley Bank in the neighboring town of Elizabethtown, Tennessee. The events that led to his conviction began in the summer of 1981. In that summer, Hardin received an inquiry from Gene Artrip and Harry Williams, with whom he was acquainted both socially and as customers of First Security Bank, about the possible application for a loan to finance an investment in Emerald Enterprises Limited ("Emerald Enterprises"). On November 2, 1981, a preliminary agreement was entered into between Artrip, Hardin, Randall Fultz, Kelly Fultz, Dean Rush, Robert Mack Slaughter, and Don Hill to set up a stock participation agreement. Hardin was present at several of the meetings of Emerald Enterprises in late 1981 and early 1982. On November 17, 1981, Hardin authorized a $250,000 loan to Emerald Enterprises by the Watauga Valley Bank. On that same day, an agreement to purchase fifty percent of the outstanding stock of Emerald Enterprises was entered into between Randall and Kelly Fultz, Dean Rush, and Mack Slaughter as sellers and H. Curtis Williams, Gene Artrip, Don Hill and Joyce Hardin, the appellant's wife, as purchasers. Although Joyce Hardin was listed as a purchaser the evidence was uncontroverted that she did not participate in any of the organizational meetings, and that the appellant signed her name to the agreement. Finally, on November 17, 1981, eight individual loan guarantees were signed by the eight owners of Emerald Enterprises including Joyce Hardin.

In December of 1981, Hardin directed his secretary, Shelby Williams, to change the minutes of the Board of Directors' meeting of the Watauga Valley Bank for September 16, 1981 and October 28, 1981. The September 16th minutes were changed to read that his lending limits were $250,000 unsecured and $300,000 secured instead of $150,000 unsecured and $200,000 secured. The October 28th minutes were changed to read that he had disclosed to the Board that his wife was one-eighth owner of Emerald Enterprises and that the Board had approved a $250,000 line of credit for Em-

---

1. Section 1005 reads in part that,

Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or
Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—
Shall be fined not more than $5,000 or imprisoned not more than five years, or both....
18 U.S.C. § 1005 (1982).

erald Enterprises. At trial, however, seven members of the Board who were present at the October 28th meeting did not recall any disclosure by Hardin or approval of the loan. These changes in the minutes formed the basis of counts three and four of the indictment.

Emerald Enterprises' promissory note was sold or participated out to several banks. The following is a summary of these transactions:

November 17, 1981—
Watauga Valley Bank loans $250,000 to Emerald Enterprises.
March 15, 1982—
Note participated out to Citizens Fidelity Bank.
December 16, 1982—
Watauga Valley Bank repurchases note from Citizens Fidelity.
December 17, 1982—
Note participated out to First American Eastern.
January 11, 1983—
Note repurchased by Watauga Valley Bank.
January 25, 1983—
Note participated out to First National Exchange Bank.
July 23, 1983—
First Security Bank loans $250,000 to Emerald Enterprises.
July 23, 1983—
July 23rd note assigned to First National Exchange Bank in exchange for the cancellation and return to the Watauga Valley Bank of the November 17, 1981 promissory note, resulting in the cancellation of Emerald Enterprises debt to Watauga Valley Bank.
November 28, 1983—
First Security Bank renews July 23rd note.

The promissory note made July 23, 1983 and renewed November 28, 1983 formed

the basis of counts ten and eleven of the indictment.

On November 25, 1986, a three-count indictment was returned charging Hardin with violating section 1005 by making false entries in the minutes of the Watauga Valley Bank Board of Directors' meetings. A three day trial began on February 4, 1987 and resulted in a hung jury. On March 25, 1987, a superceding indictment was returned. The indictment added Artrip, Hill and Harvey Mitchell, an officer of First Security Bank, as defendants. It incorporated the three counts of the first indictment and added ten additional counts. The defendants were charged with a conspiracy to defraud the Watauga Valley Bank and First Security Bank, misapplying bank funds in violation of 18 U.S.C. § 656 and making false entries in violation of section 1005. A six-day trial commenced on May 18, 1987. At the close of the evidence, the court dismissed the case as to defendants Mitchell, Artrip and Hill. After deliberations, the jury found Hardin guilty on counts three, four, ten and eleven of the indictment.[2]

The district court then sentenced Hardin to five years on count ten and concurrent five year sentences on counts three, four and eleven. The execution of the sentences of imprisonment on counts three, four and eleven were suspended, and Hardin was placed on probation.

Hardin argues that there was insufficient evidence to convict him for making false entries by entering in the books, records, and statements of First Security Bank the two promissory notes, because the promissory notes represented actual transactions. Appellant also argues that he was denied a fair trial when the court refused to instruct the jury that lack of approval for the loan is immaterial to the charges contained in counts ten and eleven. Finally, appellant argues that there was insufficient evidence to convict him on counts three and four for making false

**2.** Counts three and four of the indictment charged Hardin with violating section 1005 by altering the minutes of a Watauga Valley Bank Board of Directors' meeting. Counts ten and eleven charged him with violating section 1005

by entering the July 23rd promissory note and its renewal in the books, reports and statements of the First Security Bank when he knew in truth in fact that the loan had not been made.

entries in the minutes of the Watauga Valley Bank Board of Directors' meeting.

## II.

The standards that are applied by a reviewing court when considering a sufficiency of the evidence challenge were recited by this court in *United States v. Ayotte*, 741 F.2d 865 (6th Cir.), *cert. denied*, 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984).

> In considering such a challenge this court does not sit as a trier of fact and may not enter into a de novo consideration of the evidence. The jury's verdict 'cannot be reversed if there is substantial evidence to support the findings of guilt.' Moreover, '[i]n considering the sufficiency of the evidence, we do not determine whether it establishes guilt beyond a reasonable doubt, but only that the evidence would permit the trier of facts to find the defendants guilty beyond a reasonable doubt.' If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is one for the jury. The evidence must be construed in the manner most favorable to the prosecution.

*Id.* at 867 (citations omitted).

It is undisputed that an entry that shows a transaction as it actually occurred is not a false entry under section 1005. *See Coffin v. U.S.*, 156 U.S. 432, 462, 15 S.Ct. 394, 406, 39 L.Ed. 481 (1895) (construing section 5209 of the Revised Statutes, the forerunner of section 1005); *United States v. Gleason*, 616 F.2d 2, 29 (2d Cir.1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980); *United States v. Erickson*, 601 F.2d 296, 302 (7th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 406 (1979); *United States v. Manderson*, 511 F.2d 179, 181 (5th Cir.1975). The Court, once again construing section 5209, has stated that the aim of the statute

"was to give the assurance that upon an inspection of a bank, public officers and others would discover in its books of account a picture of its true condition." *United States v. Darby*, 289 U.S. 224, 226, 53 S.Ct. 573, 574, 77 L.Ed. 1137 (1933).

Count ten of the indictment charged Hardin with entering the promissory note into the books, reports and statements of First Security Bank when "in truth and fact [Hardin] then knew First Security Bank had not made a loan to Emerald Enterprises in the amount of $250,000." [3] Hardin contends that such a loan was made by the First Security Bank to Emerald Enterprises in that precise amount, albeit without the necessity of the actual disbursement of such funds by the Bank at the time,[4] and for that reason the entry of the promissory note in the bank records was not a false entry under section 1005.

■ The government argues that there was sufficient evidence to support a conviction on counts ten and eleven because the appellant "intentionally represented what was not the truth." It asserts that the note signed by Don Hill for Emerald Enterprises was a "false loan." The government focuses on the fact that Emerald Enterprises did not receive the proceeds from this loan. The government also cites to the facts that the July, 1983 loan was not authorized by the First Security Bank and that Hardin knew it was a "troublesome loan." The government relies on two cases for the proposition that "transactions to which the entry relates must be real and substantial, and not merely formal," *United States v. Krepps*, 605 F.2d 101, 109 (3d Cir.1979); *Phillips v. United States*, 406 F.2d 599, 601 (10th Cir.1969) and asserts that these transactions were not "real and substantial" but were "merely formal."

The case upon which the government principally relies is distinguishable from the instant case. In *Krepps*, the defendant

---

**3.** Count eleven charged him with the same crime for renewing the note.

**4.** The loan was consummated not by the disbursement of loan proceeds or funds at that time by the First Security Bank, but instead by the cancellation and extinguishment of an obligation of Emerald Enterprises in the amount of $250,000 to the Watauga Valley Bank, which was then held by the First National Exchange Bank of Roanoke under assignment from the Watauga Valley Bank.

authorized loans to two parties who agreed to have the proceeds of these loans immediately transferred to his use. *Krepps,* 605 F.2d at 102. The defendant was charged with misapplication of bank funds under section 656 and making a false entry under section 1005. The court of appeals affirmed his conviction on both charges. *Id.*

In affirming the section 1005 conviction the Third Circuit summarized the law as follows:

> The purpose of the statute proscribing false entries is 'to give assurance that upon an inspection of a bank, public officers and others would discover in its books of account a picture of its true condition.' Accordingly, the Supreme Court stated long ago that '[t]he crime of making false entries by an officer of a national bank with intent to defraud ... includes any entry on the books of the bank which is intentionally made to represent what is not true or does not exist, with the intent either to deceive its officers or to defraud the association.' In addition, courts have held that in ascertaining whether an entry is false the factfinder may focus on whether the transaction is real and substantial as opposed to merely formal. And, an entry may be false by virtue of an omission of material information as much as by an actual misstatement.

*Krepps,* 605 F.2d at 109 (footnotes omitted).

The court then noted that "the bank's books showed loans to the [two parties], but did not reflect Krepps' interest as the ultimate beneficiary of the loans." *Id.* The court concluded that "a jury may plausibly have determined that Krepps intended to deceive the bank's officers or those appointed to examine its books when he omitted from the bank's records any reference to his being the beneficiary of the loan. Thus, ... a jury could reasonably conclude that Krepps caused false entries to be made in violation of § 1005 notwithstanding the fact that named debtors may have

been financially capable of repaying the loan and recognized that they were obligated to do so." *Id.* (footnotes omitted).

In the instant case, the November 23rd loan was not a "mere formal transaction." Rather, it represented a refinancing of Emerald Enterprises' loan with a change in the primary obligee.[5] Furthermore, unlike the defendant in *Krepps,* Hardin was not the recipient or direct beneficiary of the loan proceeds. Since the facts of the instant case are distinguishable from those in *Krepps,* we do not find its conclusions applicable to this case.

We are also not persuaded by the Fourth Circuit's opinion in *United States v. Luke,* 701 F.2d 1104 (4th Cir.1983), in which the court affirmed a bank officer's section 1005 conviction on the basis of a loan being a sham transaction.

In *Luke,* Sheehy, a bank officer, had a lending authority of $50,000, but had lent $75,000 and $200,000 to Mastertrax, a recording company. When the bank management discovered the $75,000 loan, Sheehy became concerned that the bank officers would discover the full extent of the Mastertrax borrowings and discharge him from his position with the bank. In order to protect his position, Sheehy met with the owners of Sun Carpet, to whom he had lent $122,000, a sum also apparently well in excess of his lending authority, and arranged to have the bank lend $31,000 to Sun Carpet, which in turn would use the money to repay some of the Mastertrax loan. Sheehy did not intend to look to Sun Carpet for repayment of the $31,000, however, but rather would look to Mastertrax, the beneficiary of the loan. The government argued that the loan to Sun Carpet constituted a misapplication of bank funds in violation of section 656 because it was a "sham" transaction. *Id.* at 1106.

In affirming the section 656 conviction, the court analyzed this transaction under the line of cases that dealt with bank loans made to individuals, who, with the knowledge of bank officials, passed on the pro-

---

**5.** Watagua Valley Bank was the primary obligee on the original note while First Security Bank was the primary obligee on the latter note.

ceeds to third parties. The court then determined that the Sun Carpet loan fit in the category of willful misapplication where a bank official assured the named debtor that they would look to the third party, who actually received the loan proceeds, for repayment. The court then, without discussion, applied the same analysis to the section 1005 conviction and concluded that since the loan to Sun Carpet was a sham transaction, the note was a false entry. *Id.* at 1108.

Since, in the instant case, First Security Bank was not looking to any other party for repayment but rather would look to Emerald Enterprises, the named debtor, this transaction is not the type of transaction that the *Luke* court categorized as a "sham." Furthermore, even if the Emerald Enterprises loan could be characterized as a questionable business transaction, the entry of the note would not be a false entry since it recorded an actual transaction exactly as it occurred. *See, e.g., Erickson,* 601 F.2d at 302 (an entry recording an actual transaction on a bank's books exactly as it occurred is not a false entry under section 1005 even though it is a part of a fraudulent or otherwise illegal scheme).

To counter the government's arguments, Hardin points to dicta from two early circuit court cases for the proposition that the recordings of unauthorized transactions are not false entries if they accurately reflect the transactions. *See Laws v. United States,* 66 F.2d 870, 873 (10th Cir.1933); *Twining v. United States,* 141 F. 41, 44 (3d Cir.1905). This proposition is in accord with the Court's statement on the aim of the false entry statute, which is to insure that bank records give an account of its true condition. *See Darby,* 289 U.S. at 226, 53 S.Ct. at 574. The proposition is also supported by the plain language of section 1005 which separates the crimes of issuing unauthorized notes and making false entries.

Hardin asserts that the July 23, 1983 note was a binding legal obligation on Emerald Enterprises and the note was therefore not a false entry. To counter the government's argument that no funds were disbursed to Emerald Enterprises, appellant points out that, "[a]s a matter of common knowledge, loans are frequently consummated by the disbursement of funds by a bank, at the request of the borrower, to a third person to whom the borrower is indebted, such as another existing lender or the seller from whom the borrower is committed by virtue of a purchase agreement."

Hardin's argument that the July 23rd loan was an actual transaction and therefore the note was not a false entry is persuasive. The transaction, although manipulative, does appear to be a refinancing of the loan by Emerald Enterprises. While the fact that the loan may have been disadvantageous to First Security Bank or exceeded Hardin's loan limit may have relevance to a section 656 charge [6] or a charge under the second paragraph of section 1005, it does not seem relevant to the section 1005 charge in the indictment. "That part of § 1005 which creates the offense of making 'any false entry' a crime was not designed to cover other criminal breaches of duty...." *Manderson,* 511 F.2d at 181 (citing *United States v. Young,* 128 F. 111 (M.D.Ala.1904)).

Appellant was charged with making a false entry in violation of section 1005 by entering in the books, reports and statements of First Security Bank a promissory note in the amount of $250,000 when he knew no such loan had been made. At trial and before this court, however, the government did not argue that the loan was not made, but argued that the loan exceeded Hardin's authority,[7] was a sham, or was a mere formality. Since the government did not prove that the loan was not made, and since an entry that records a transaction as

---

**6.** Hardin was acquitted on the counts alleging a section 656 violation.

**7.** It is a well established principle that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him. *Stirone v. United States,* 361 U.S.

212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). In the instant case, appellant was not charged with violating section 1005 by making a loan without authority under the second paragraph of section 1005.

it actually occurred is not a false entry, this court finds that there was insufficient evidence to convict the appellant of the charges in counts ten and eleven.[8]

■ Appellant's final argument is that there was insufficient evidence to sustain his conviction on counts three and four of the indictment. In count three of the indictment, appellant was charged with changing the Watauga Valley Bank Board of Directors' minutes for October 28, 1981 to read that he disclosed to the Board that his wife "Peggy Hardin was one-eighth owner of Emerald Enterprises" when appellant knew that he had not disclosed this to the Board. In count four, appellant was charged with changing the Watauga Valley Bank Board of Directors' minutes for the same date to read that the Board had approved a "line of credit for Emerald Enterprises in the amount of $250,000" when in fact the Board had not approved the line of credit on that date.

It is undisputed that Hardin directed his secretary, Shelby Williams, to add the last two sentences to the October 28, 1981 minutes in December of 1981. Hardin contends that his actions were taken to correct an omission in the minutes.

To counter Hardin's contention that his actions were taken to make the minutes accurately reflect what happened at the meeting, the government offered the testimony of seven board members who were present at the October 18, 1981 meeting. None of the seven recalled any discussion about Mrs. Hardin's interest in Emerald Enterprises or the approval of the $250,000 loan to Emerald Enterprises. The government also points to the fact that all of the minutes were cosigned by William Mottern, the Chairman of the Board, with the exception of the October 28th minutes.

Hardin argues that the testimony of the directors should be discounted because none of the directors had retained any notes of the meeting or had independent recollection of the matters discussed at the meeting. He also points out that three of

the directors also could not recall the discussion of the same line of credit at a December, 1981 loan committee meeting, but the minutes of that meeting, which were not kept by Hardin, reflect that Emerald Enterprises' loan was approved at the meeting.

Hardin's arguments are not persuasive. His argument concerning the loan committee minutes is seriously weakened by the fact that Emerald Enterprises' loan is not addressed in the minutes themselves, but is merely listed along with over one hundred other loans in an eight page attachment to the minutes. Also, there was testimony that the loan meetings were informal and that not every loan presented to the committee was reviewed by its members.

Other evidence that supports the conviction was the testimony concerning Hardin's involvement in the organization of Emerald Enterprises, and the fact that his secretary also changed the minutes of the September 16, 1981 board meeting to show an increase in the loan limits to $300,000 secured and $250,000 unsecured. While this does not prove that he made false entries in the October minutes, it is evidence of his motive for making such entries.

Given the testimony of the seven board members, plus the other evidence discussed above, this court finds that there was sufficient evidence to support Hardin's convictions for causing a false entry to be made in the minutes of the October meeting.

Accordingly, we REVERSE and VACATE Hardin's conviction on counts ten and eleven and AFFIRM his conviction on counts three and four.

---

**8.** Since we find that there was insufficient evidence to convict appellant of the charges in counts ten and eleven, we do not address his argument pertaining to the jury instructions concerning those counts.