**UNITED STATES of America, Plaintiff–Appellee (88–5195), Plaintiff–Appellant (88–5484),**

v.

**Billy York WALKER, Defendant–Appellant (88–5195), Defendant–Appellee (88–5484).**

**Nos. 88–5195, 88–5484.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1988.

Decided April 3, 1989.

W. Hickman Ewing, Jr., U.S. Atty., Frederick H. Godwin, Asst. U.S. Atty. (argued), Memphis, Tenn., for U.S.

James Wilson (argued), Hal Gerber, Memphis, Tenn., for Billy York Walker.

Before NELSON and BOGGS, Circuit Judges, and ENSLEN, District Judge.[*]

ENSLEN, District Judge.

Billy York Walker appeals his conviction following a jury trial on each count of a 28–count indictment alleging violations of various federal banking laws.[1] Prior to 1985, Mr. Walker was the president and majority shareholder of Farmers Bank located in Dyersburg, Tennessee. Most of the bank's business was agricultural in nature. Mr. Walker was also the owner, president and operator of Walker Grain Company ("Walker Grain"), a grain storage firm, located in the same town.

Count 1 alleges that Walker and his life-long friend, Walter Hastings, conspired to defraud Farmers Bank, to misapply bank funds and to make false entries in bank records in violation of 18 U.S.C. § 371.

Walker convinced Hastings to sign two promissory notes, one for $150,000 secured by stock owned by Hastings, and one for $118,000 which was unsecured. The proceeds of both loans were immediately deposited to Walker Grain's account at Farmers Bank. The loan applications did not disclose Walker Grain's interest in the loans. Walker personally approved both loans.

Originally, Hastings called Walker each time an interest payment was due and Walker made the payment using a Walker Grain check. In 1985, Walker started giving checks to Hastings and Hastings made the payments using his own checks. The overt acts in the conspiracy each involve separate interest payments on the two loans. The bank's records on each loan indicate that the loans were for Hastings' benefit and that Hastings made the interest payments. Counts 3–21 allege false entries in bank records based upon the failure of the records to indicate that the loans were not for Hastings' benefit and that he did not make the interest payments from his own funds.

In 1985, the bank's vice president in charge of loans, Larry James, noticed that the Hastings loans were becoming past due. He knew that Walker and Hastings were friends and offered to take the collection of these loans over for Walker, thinking Walker might be uncomfortable handling the accounts himself. Walker assured James that Hastings would repay the loans as soon as Hastings solved some other financial problems. An investigation conducted by the bank, at the suggestion of federal examiners, subsequently revealed Walker's interest in the Hastings loans. When confronted with the matter by bank officials, Walker shook his head and replied, "What can I say?" Thereafter, Walker took an indefinite leave of absence and never returned to the bank.

---

[*] Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation.

1. The indictment alleged violations of the following statutes: Count 1, conspiracy to commit bank fraud, 18 U.S.C. § 371, Counts 3–21, 24–26, false entries in bank records, 18 U.S.C. § 1005; Counts 22 and 28, false statement on loan application, 18 U.S.C. § 1014; and Counts 23 and 27, bank fraud, 18 U.S.C. § 1344.

Walker's defense to counts 1 and 3–21 was that he lacked any intent to defraud the bank. He contends that he approved each loan in the ordinary course of business, based upon Hastings' credit worthiness, character, and reputation, as well as the bank's potential to profit from each loan. He claims that he lacked any intent to deceive the bank, although he admits that he did not tell the bank's board of directors of Walker Grain's interest in the loans. Walker contended that he did not think it necessary to tell the bank's board of directors about Walker Grain Company's interest in the Hastings loans, since the bank was only interested in profitability and since Hastings had the ability to repay the loans.[2] Walker testified that Hastings understood his obligation to repay the loans, but understood that the money would come from Walker. Hastings testified that he had no intention of repaying the loans and thought Walker would do so.

Count 2 alleges that Walker, in his capacity as president of Farmers Bank, made a false statement on a Federal Deposit Insurance Corporation ("FDIC") questionnaire. The questionnaire at issue, dated May 25, 1982, asked Walker to: "List all extensions of credit made since last examination for the accommodation of others than those whose names appear on bank's records or on credit instruments in connection with such extension." Walker answered that no such loans had been made. The government charged that this statement was false because it failed to disclose the loans to Hastings which were used for the benefit of Walker Grain.

Count 22 involves a loan made to Mr. Hastings by the Bank of Friendship, located in Friendship, Tennessee, in the amount of $150,000. The president of the Bank of Friendship is John York, Mr. Walker's

cousin. Mr. York testified that Walker called him and asked him to make a loan to Walter Hastings. York never spoke to Hastings about the loan. The note showed that the purpose of the loan was for "operating capital." It was repaid by a check drawn on Farmers Bank showing Hastings as the remitter. Hastings testified that he had never been to the Bank of Friendship and had never spoken to York regarding a loan. The government contended that the loan to Hastings was not used as operating capital, but was instead used to make a principal and interest payment on Hastings' $150,000 note at Farmer's Bank. The balance of one of the Hastings notes was increased to repay the Bank of Friendship loan. The government argued that Walker obtained this loan for Hastings under false pretenses, by failing to disclose Walker Grain's interest in the transaction.[3]

Counts 23 and 24 relate to a gentleman named Dan Holloway. Mr. Holloway's 1982 financial statement showed a net worth of $100 million dollars and he had deposits in the Farmers Bank totaling up to $1,250,000. Walker owned an option on an 80–acre farm in Dyersburg, Tennessee. He and Holloway decided to develop the farm as a gravel pit. They jointly applied for, and received, a loan for $120,000 from First Tennessee Bank to buy the farm/gravel pit. This note was secured by a deed of trust on the land. Walker and Holloway never earned any profits on the gravel pit. They each paid half of the interest on the loan and of one payment to reduce principal.

When First Tennessee Bank requested a second principal reduction, Walker could not come up with the funds. Holloway agreed to take over the loan in exchange for Walker's interest in the property. At Holloway's request, Walker arranged for

---

**2.** Hastings' financial statement filed with the bank indicated Hastings' net worth was between $6 and $8 million dollars at the time of these loans.

**3.** At trial, Walker characterized this transaction as a "participation loan," arguing that the Bank of Friendship extended credit to Hastings at the request of Farmers Bank, to provide the latter bank with some ready cash. Walker argued

that such transactions were commonplace, and that in the general course of business, Farmers Bank would repay the participating bank when it had available cash. Since the participating bank would look to Farmers Bank, rather than to debtor for repayment, Walker contended that it was unnecessary to inform the Bank of Friendship of the loan's real beneficiary.

Farmers Bank to lend Holloway $122,-055.90. Part of the proceeds from the loan went to pay off the First Tennessee loan and part went to cover an overdraft in a checking account held jointly by Walker and Holloway. Walker transferred his interest in the property to Holloway after these transactions were completed.

Count 23 alleges that Walker engaged in a scheme to defraud Farmers Bank by means of false statements to the bank's finance committee. Members of the finance committee testified that, on January 7, 1985, Walker told the committee that the loan to Holloway was well collateralized and/or secured by real estate. The minutes of the meeting contain the following entry:

> Dan Holloway, application for loan of $122,000 at FBP for one year, accompanied by financial statements, to payoff farm note at First Tennessee Bank, secured by deed of trust on farm. Approved.

Walker did not disclose his interest in the loan to the finance committee and none of the loan documents disclosed that Walker benefited from the loan. Walker also denied that he benefited from the loan, even though it eliminated his obligation to First Tennessee Bank and an overdraft on a checking account at Farmers Bank.

Count 24 alleges that Walker caused a false entry to be made in bank records—specifically the minutes of the January 7, 1985 finance committee meeting—since those minutes imply that the note to Holloway was secured by a deed of trust on the farm when, in fact, the loan from Farmers Bank was unsecured. Walker argued that the minute entry is not false, since the reference to a deed of trust refers to the First Tennessee Bank loan, not to the loan from Farmers Bank. In addition, the note itself and the loan documents all indicated on their face that the Farmers Bank loan was unsecured. Walker argued that he did not receive a benefit from the loan to Holloway, since he had already relinquished his interest in the gravel pit.

Count 25 alleges a false entry in the form of a false endorsement Walker caused another bank employee, Mabel Paschal, to make on a cashier's check. Walker drew a check for $54,747.51 on Walker Grain's checking account, made payable to Henry Simon. Walker gave Paschal the Walker Grain/Henry Simon check and directed her to make out a cashier's check to Holloway in the amount of $47,770.02, which she did. Walker then told her to give him the difference in cash. Paschal complied, and then noticed that the Simon check was not endorsed. She testified that Walker told her to sign it. When she refused, he instructed her to stamp the back of the check with a stamp reading "Credit to the account of the within named payee. Absence of endorsement guaranteed, Farmers Bank, Dyersburg, TN."

Walker denied telling Paschal to endorse the check or to stamp it. He argued that, since the check was drawn on the Walker Grain account, it did not need an endorsement and this was not unusual. Walker admitted that Henry Simon did not exist, and explained his use of a false name by saying that he did not want Holloway to become embroiled in his difficulties with the FDIC. The government contends that the cash was given to Holloway to make one half of an interest payment due on the $122,055.90 loan to Holloway. Holloway made this interest payment, with a check drawn on his business account, on the same day as the cashier's check transactions occurred.

Count 26 alleges that Walker incorrectly answered the question involved in Count 2 on a July, 1985 FDIC questionnaire. As he had in 1982, Walker answered that no accommodation loans had been made. An FDIC examiner took the July, 1985 questionnaire to Walker and stated that he had found two loans which should have been reflected in the questionnaire. Walker had his secretary delete the previous answer and type the two loans in its place. The government contends that Walker should have, but did not, include the loan to Holloway and a January 23, 1985 loan to Carl Jones. Walker contends that his original answer was correct, according to his understanding of the questionnaire.

Jones was a former business partner in Walker Grain. He left the firm in 1983 or 1984, owing it approximately $200,000. He also owned some beans and milo which were stored at the grain company. Walker approved a loan from Farmers Bank to Jones for approximately $130,000 which was secured by Jones' beans. Walker did not need board approval to make this loan. The money was deposited to Jones' account and was used to pay his debt to Walker Grain, leaving a balance due of approximately $70,000. Walker contends that this was not an "accommodation loan" within the meaning of the FDIC questionnaire.

The government characterized this transaction somewhat differently. It argued that Jones was the manager of Walker Grain in January 1985 and that he also had a farming partnership with Walker. The farming operation was financed by advances from Walker Grain. In January, 1985, Walker told Jones that the farm owed Walker Grain for the advances and that they needed to be paid because the Walker Grain account was overdrawn. Walker wanted Jones to come to the bank to get a loan to cover the overdraft. On January 24, Jones borrowed about $130,000 from the bank in his own name. Walker approved the loan. The money went to Jones' personal account and was paid to Walker Grain by Jones' personal check on the same day. Although the note said it was secured by beans, Jones testified that these beans did not exist. The note did not indicate that Jones' farm or Walker Grain would benefit from the loan.

Count 27 alleges that Walker engaged in a scheme to defraud Farmers Bank when, in January, 1985 he applied to the bank for a loan on behalf of Walker Grain. Walker needed the loan to cover a $300,000 overdraft in the grain company's checking account. After applying for the loan, Walker then deposited a check for $300,000, drawn on Walker Grain's account at First Citizens National Bank, into the company's Farmers Bank account. The First Citizens account had been closed in 1982 and did not have sufficient funds to cover the check. Walker told a vice president of Farmers Bank that the grain company had a loan for $300,000 and other deposits coming in which would cover the overdraft. He failed to disclose the loans made to Hastings and Jones on behalf of the grain company. Walker Grain eventually obtained a $190,000 loan from Farmers Bank.

Count 28 alleges that Walker made a false statement to the bank, for the purpose of influencing its action on the Walker Grain loan. The statement at issue is Walker's statement that the grain company had funds to cover the check drawn on First Citizens Bank and therefore the overdraft in the grain company's Farmers Bank account. The government charged that this statement was false since Walker knew that the First Citizens account was closed and did not have funds to pay the check.

Walker testified that he was aware of the overdraft and called an employee of First Citizens Bank to arrange a loan. The employee, Mr. Lipford, told Walker that the loan would have to be approved by his discount committee. Walker told Lipford that, in the meantime, he was going to write a check on the company's First Citizens account and deposit it at Farmers Bank. Lipford approved and this was done. Walker alleges that he informed Farmers Bank about the First Citizens loan and about the fact that the check was written before the loan was actually approved. The First Citizens loan was never approved. Walker Grain's overdraft at Farmers Bank was cured by the Farmers Bank loan and by the check from Jones.

Mr. Walker raises five issues on appeal. He argues first that the trial court erred in admitting into evidence Walter Hastings' guilty plea to a conspiracy identical to that alleged in count 1 of the indictment. His second argument is that the trial court erred in denying him a new trial when Hastings withdrew his guilty plea. Third, Walker argues that the trial court erred in excluding evidence relevant to his intent to defraud or injure Farmers Bank. Fourth, he contends that prosecution of the conspiracy alleged in count 1 is barred by the applicable statute of limitations. Finally, Walker argues that the trial court erred in

denying his motion for judgments of acquittal on counts 2, 3–21, 24, 26 and 28. Because we find no error, we will affirm Walker's conviction on all counts. The government has appealed from the district court's order granting Walker bond pending appeal. Because we resolve Walker's appeal in favor of the government, we need not reach the issues raised in its appeal.

*Admission of Hastings' Guilty Plea and Plea Agreement.* Prior to Walker's trial, Mr. Hastings pled guilty to a conspiracy charge virtually identical to Count 1 of the indictment against Walker.[4] Mr. Hastings testified at Walker's trial, and was allowed to testify to both his guilty plea and the contents of his plea agreement with the government. Walker argues that admission of this evidence made his conviction on Count 1 inevitable, since the jury knew that Hastings was guilty of a conspiracy and that Walker was the only individual Hastings could have conspired with. He concludes that admission of Hastings' guilty plea and plea agreement allowed the government to establish his guilt by association with Hastings.

■ We hold that it was not error for the trial court to admit evidence of Hastings' guilty plea and plea agreement. While the government may not use a witness' guilty plea as evidence of another defendant's guilt, the plea "may properly be considered as evidence of a witness' credibility," *United States v. Christian,* 786 F.2d 203, 214 (6th Cir.1986), and may also be used to show the witness' first-hand knowledge of and participation in the offense. *United States v. Little Boy,* 578 F.2d 211, 212 (8th Cir.1978). "Admissibility of the plea turns on the purpose for which it is offered. When that purpose is to further the jury's difficult task of evaluating credibility, it is relevant and admissible without regard to the identity of the offering party." *United States v. Halbert,* 640 F.2d 1000, 1004 (9th Cir.1981).

■ We have held that much of the prejudice associated with the use of a plea agreement is negated where the pleading individual testifies at trial. "In such a case, it is reasonable to believe that the jury uses the testimony regarding the facts to convict the [ ]defendants and the testimony regarding the guilty plea to assess the witness' credibility." *Christian,* 786 F.2d at 214. Introduction of the entire plea agreement is permitted, even where the agreement contains a promise to testify truthfully, since these details allow the jury to "consider fully the possible conflicting motivations underlying the witness' testimony, and, thus, the witness' credibility." *United States v. Townsend,* 796 F.2d 158, 163 (6th Cir.1986).

In this case, these is no argument that the government improperly emphasized Hastings' guilty plea, *United States v. Halbert,* 640 F.2d 1000, 1005 (9th Cir.1981); *United States v. Pickett,* 746 F.2d 1129, 1135–36 (6th Cir.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985), nor could such a claim be sustained. Hastings testified only briefly regarding the matter, and the government did not refer to his plea in its closing argument. The agreement was relevant to Hastings' credibility and was admissible for that purpose. Further, the trial court gave the jury an appropriate limiting instruction, cautioning them that the plea agreement had "been offered so that you may properly assess the credibility of the witness. It is not offered for any other purpose and you should not consider it for any other purpose." While it is a better practice to instruct the jury on both the plea agreement and the guilty plea itself, the trial court's failure to do so in this instance did not deprive Walker of a fair trial. As the government argues, the plea agreement at issue discussed Hastings' guilty plea. An instruction regarding the plea agreement was sufficient to confine the jury's consideration of both the plea and the agreement to its assessment of Hastings' credibility.

Walker's remaining argument, that the similarity between the charge against Has-

4. Hastings is identified as a co-conspirator in the Walker indictment, but is not named as a co-defendant in that indictment.

tings and Count 1 of the indictment against Walker virtually assured his conviction on that count, is without merit. It is often the case that a defendant will plead guilty to a conspiracy charge, and then testify against his co-conspirators who stand trial for a similar or identical crime. If it was always unfairly prejudicial to admit the guilty plea of such a co-defendant, then the rule recognized in *Christian, Townsend* and *Halbert* would be meaningless. The jury was instructed that Hastings' guilty plea could not be used as evidence of Walker's guilt, and that it could consider that plea only in evaluating Hastings' credibility. There is no reason to assume that the jury disregarded this instruction.

■ *Denial of Motion for New Trial.* Approximately five months after Walker's conviction, Hastings appeared for sentencing pursuant to his guilty plea and was allowed to withdraw that plea. At the sentencing hearing, Hastings expressly denied that he intended to defraud the bank through his transactions with Walker. Upon learning of Hastings' withdrawn plea, Walker moved for a new trial on the ground of newly discovered evidence. The trial court denied this motion without a hearing. Walker argues that it was an abuse of the trial court's discretion to deny this motion. We find that this issue need not be decided because, after Walker's motion was denied, Mr. Hastings changed his plea a second time and pled guilty to the same conspiracy. The "newly discovered evidence" proffered by Walker in support of a new trial, therefore, no longer exists.[5]

*Intent to Defraud.* At trial, Mr. Walker attempted to prove that he lacked an intent to defraud or injure the bank by proving that Holloway and Hastings were good credit risks and understood their obligation to repay the loans at issue. Walker argues that, under *United States v. Gens,* 493 F.2d 216 (1st Cir.1974), this evidence is relevant to show a lack of intent to defraud the bank. The government argues that this evidence was properly excluded. Relying on *United States v. Foster,* 566 F.2d 1045 (6th Cir.1977), *cert. denied,* 435 U.S. 917, 98 S.Ct. 1473, 55 L.Ed.2d 509 (1978), the government argues that whether the loans were "good" or "bad" is irrelevant to the defendant's intent to defraud the bank. The trial court apparently agreed with the government's position, ruling the evidence irrelevant. Despite this ruling, however, the jury heard testimony from a number of witnesses indicating that both Hastings and Holloway were good credit risks and their financial statements indicated that they had the ability to repay the loans. In addition, Mr. Walker testified that he considered the borrower's financial strength, character, and reputation as well as the bank's potential to profit from the loans before approving the loans. Mr. Walker further testified that Holloway and Hastings understood their obligation to repay the loans in the event that Walker was unable to do so. Although we believe that the government and the trial court construed *Foster* too broadly, we find no error in the attempted exclusion of this evidence.

---

5. Even if Walker's "newly discovered evidence" had not evaporated, we would affirm the trial court's decision. The so-called rule of consistency requires that, where all possible co-conspirators are tried together, and all but one are acquitted, the remaining conspirator's conviction must be reversed for lack of sufficient evidence. *United States v. Patterson,* 678 F.2d 774 (9th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); *United States v. Phillips,* 630 F.2d 1138 (6th Cir.1980). The rule does not apply where co-conspirators are tried separately or could have conspired with unindicted individuals. *United States v. Sachs,* 801 F.2d 839 (6th Cir.1986); *United States v. Irvin,* 787 F.2d 1506, 1512–13 (11th Cir.1986); *United States v. Espinos–Cerpa,* 630 F.2d 328 (5th Cir.1980). Thus, even if Hastings had been acquitted of the conspiracy, his acquittal would not mandate reversal of Walker's conviction. Further, at the time Walker's motion was denied, Hastings' guilt had not been determined. The jury was free to discredit Hastings' claim that he lacked intent to defraud the bank, just as it discredited Walker's similar claim. While Hastings' withdrawn plea may incrementally increase Walker's chances of acquittal, it is insufficient to demonstrate that Walker would likely be acquitted if his case were retried. *United States v. O'Dell,* 805 F.2d 637 (6th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987); *United States v. Terry,* 729 F.2d 1063, 1067 (6th Cir.1984); *United States v. Barlow,* 693 F.2d 954 (6th Cir.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).

In *United States v. Gens*, 493 F.2d 216 (1st Cir.1974), the court reversed a bank director's conviction for misapplication of bank funds, 18 U.S.C. § 656, finding insufficient evidence that the director had intended to defraud the bank. In that case, two bank officers approved loans to third parties, knowing that the funds would be given to Gens, a bank director who could not borrow the money himself because he had already exceeded the bank's lending limit. The First Circuit held that misapplication of bank funds had not been established:

> [W]here the named debtor is both financially capable and fully understands that it is his responsibility to repay, a loan to him cannot—absent other circumstances—properly be characterized as a sham or dummy, even if bank officials know he will turn over the proceeds to a third party. Instead, what we really have in such a situation are two loans: one from the bank to the named debtor and the other from the named debtor to the third party. The bank looks to the named debtor for repayment of its loan, while the named debtor looks to the third party for repayment of his loan. If for some reason the third party fails to make repayment to the named debtor, the latter nonetheless recognizes that this failure does not end his own obligation to repay the bank. In this situation, the bank official has simply granted a loan to a financially capable party, which is precisely what a bank official should do. There is no natural tendency to injure or defraud the bank, and the official cannot be said to have willfully misapplied bank funds in violation of § 656.

*Id.* at 222 (footnote omitted). *See also United States v. Fusaro*, 708 F.2d 17, 21 (1st Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983); *United States v. Blackwood*, 735 F.2d 142, 145–46 (4th Cir.1984).

A number of other circuits have accepted the *Gens* court's reasoning, but have refused to apply it in cases where the beneficiary of the loan is a bank officer who conceals his interest in the loan from the bank. *See United States v. Shively*, 715 F.2d 260, 265 (7th Cir.1983) ("it has been held to be misapplication per se for a bank officer or employee to funnel funds to himself by making a loan to a third party ..."), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984); *United States v. Krepps*, 605 F.2d 101, 106 (3rd Cir.1979); *United States v. Twiford*, 600 F.2d 1339, 1341 (10th Cir.1979) ("misapplication occurs when an officer of a bank knowingly lends money to a fictitious borrower or causes the loan to be made for his own benefit, concealing his interest from the bank"); *United States v. Steffen*, 641 F.2d 591, 597 (8th Cir.) (financial condition of borrower irrelevant where bank officer benefits from loan and conceals interest from the bank), *cert. denied*, 452 U.S. 943, 101 S.Ct. 3091, 69 L.Ed.2d 959 (1981). At least one circuit has rejected the *Gens* analysis in all circumstances. *United States v. Kennedy*, 564 F.2d 1329, 1339 (9th Cir.1977) ("misapplication ... occurs when funds are distributed under a record which misrepresents the true state of the record with the intent that bank officials ... will be deceived"), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).[6]

Although we have been faced with the issue on at least two occasions, *United States v. Cooper*, 577 F.2d 1079 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *United States v. Foster*, 566 F.2d 1045 (6th Cir.1977), *cert. denied*, 435 U.S. 917, 98 S.Ct. 1473, 55 L.Ed. 2d 509 (1978), we have never expressly adopted or rejected the *Gens* analysis. In *Cooper*, we found that the named borrowers lacked the ability to repay the loans and did not understand their obligation to do so.

---

**6.** Each of these cases involve misapplication of bank funds in violation of 18 U.S.C. § 656. The crime at issue here is bank fraud, in violation of 18 U.S.C. §§ 371, 1344. Both crimes require proof that the defendant intended to defraud or injure a bank. The crimes differ in that misapplication requires proof of a conversion of bank funds, while bank fraud requires only a fraudulent statement designed to influence a bank's action. *Compare United States v. Goldblatt*, 813 F.2d 619, 625–26 (3rd Cir.1987), *with United States v. Duncan*, 598 F.2d 839, 860 (4th Cir. 1979).

Thus, even if *Gens* had been adopted, it would not have exonerated the bank official's conduct in that case. In *Foster*, we distinguished *Gens* on the grounds that, unlike the defendants in *Foster*, "the defendants in *Gens* were not recipients of kickbacks from loans which they had approved." 566 F.2d at 1050. Since the bank officials in *Foster* received kickbacks in exchange for approving the loans at issue, they knew that the loans had to be made in an amount larger than would otherwise have been necessary. Thus, even if the borrowers had fit the *Gens* criteria, a portion of the loan proceeds had been misapplied—that portion attributable to the kickbacks. *Foster* did not hold that evidence of a named borrower's credit worthiness was irrelevant under all circumstances.

In this case, there is no evidence that Mr. Walker received a kickback from the loans at issue, and it appears that the named borrowers, Hastings and Holloway, had the ability to repay the loans and understood their obligation to do so. Mr. Walker is, however, a bank officer, and he approved the loans at issue for his own benefit concealing that fact from the bank's board of directors. This case, therefore, requires us to determine whether we will adopt the First Circuit's *Gens* rule, the modified form of that rule adopted by other circuits, or the Ninth Circuit's complete rejection of *Gens*. We believe that the Third Circuit's reasoning in *United States v. Krepps*, 605 F.2d 101 (3rd Cir.1979), most accurately states the law on this issue.

In *Krepps*, a bank officer loaned money to two borrowers, who then loaned the money to him. He concealed his interest in these loans from other bank officials. The Third Circuit found sufficient evidence of an intent to defraud the bank, and affirmed his conviction for misapplication of bank funds:

> [I]f the named debtor is credit worthy and understands that he is responsible to repay the loan, "the bank official has simply granted a loan to a financially capable party, which is precisely what a bank official should do." How this party chooses to dispose of the fund so obtained should, in the absence of misrepresentation on his part, be of no interest to the bank, and certainly not to the criminal law.

. . . . .

> It is quite a different matter, however, when a bank officer procures the assistance of another person in obtaining the desired funds for his *own* use. In these circumstances, it cannot be said that the bank officer is doing "precisely what a bank official should do." To the contrary, a jury would be warranted in concluding that the loan transaction was undertaken with intent to defraud the bank or to deceive its officers or examiners, notwithstanding the fact that the intermediary may have been financially capable of repaying the loan and undertook to do so. A jury might plausibly deduce that the bank officer, by channeling the funds through another party, sought to conceal from the bank his own interest in the transaction and thereby circumvent the barrier—imposed by the statute [limiting direct loans to bank officers] and the bank's own regulations—to the bank's making the particular loan directly to him.

. . . . .

> Essentially, then, it is our view that a willful misapplication ... is established when a bank officer secures a loan for himself by having the bank lend to a named debtor who then transfers the funds to him, even when the named debtor is financially capable and [fully] understands that it is his legal responsibility to repay the loan. In these circumstances, the very existence of a mediated transaction demonstrates that the bank officer had the measure of criminal intent needed to establish a willful misapplication of bank funds.

*Id.* at 106, 108.

The *Krepps* rule is compatible with our decisions in *Cooper, Foster* and *United States v. Franklin*, 608 F.2d 241 (6th Cir. 1979). In each of these cases, we held that, "at the very least, the term misapplication '[means a] deceitful and dishonest mishandling of bank funds.'" *Franklin*, 608

F.2d at 244 (quoting *Cooper*, 577 F.2d at 1085). Where a bank officer arranges loans for a named borrower, intending that the proceeds will benefit himself, and without disclosing his interest in the loan transaction, he has acted in a deceitful and dishonest manner. As the Third Circuit noted in *Krepps*, he has acted to circumvent federal statutes limiting a bank's extension of credit to its own officers and he has concealed material facts about the transaction from other bank officials. Such conduct is sufficient to establish the necessary intent to injure or defraud the bank.

■ In this case, evidence of Hastings' and Holloway's credit worthiness and their understanding of the obligation to repay was irrelevant, as the trial court held. Mr. Walker arranged these loans for his own benefit, concealing his interest in them from other bank officials. With these facts, the government adequately established Walker's intent to defraud the bank. The fact that the loans were otherwise "good" loans, and that the named borrowers understood their obligation to repay the loans if Walker defaulted on them, is irrelevant because Walker personally benefited from the transactions at issue. Thus, even if the trial court misread our holding in *Foster*, his ruling was correct. Walker was not prejudiced by the trial court's attempted exclusion of this evidence, and his convictions on counts 1, 23 and 27 are affirmed.

■ Walker's remaining arguments are without merit. Count 1 of the indictment is not barred by the applicable statute of limitations. 18 U.S.C. § 3282. Although the loans at issue in that count were made in 1981, Walker continuously attempted to conceal his interest in them by keeping payments on the loans current and, later, by giving Hastings the funds to make payments on Walker's behalf. The government thus established that repayment of the loans and concealment of Walker's interest in them were objectives of the conspiracy. The conspiracy therefore continued until its discovery in 1985. "In conspiracies where a main objective has not been attained or abandoned and conceal-

ment is essential to success of that objective, attempts to conceal the conspiracy are made in furtherance of the conspiracy." *United States v. Howard*, 770 F.2d 57, 61 (6th Cir.1985). *See also United States v. Portner*, 462 F.2d 678 (2d Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); *United States v. Hickey*, 360 F.2d 127 (7th Cir.1966).

■ Walker attacks his convictions on counts 2 and 26 of the indictment, which allege that he made false entries in two Federal Deposit Insurance Corporation ("FDIC") questionnaires, in violation of 18 U.S.C. § 1005. The entries at issue required Walker to disclose all accommodation loans, or loans made to named parties on behalf of an unnamed person, which had been made, "since last examination." Walker answered this question in the negative in 1982, after the loans to Hastings, and again in 1985, after the Holloway and Jones loans. He testified at trial that he believed the question referred to the last bank examination by any entity, including state bank examiners. Because the record does not disclose whether Walker revealed these loans during examinations by state officials which preceded the FDIC examinations, Walker argues that his answers to the questions were correct and that the jury must have speculated as to his guilt on these counts.

Walker was not entitled to a directed verdict of acquittal on either count. Taking the evidence in the light most favorable to the government, a reasonable jury could have concluded that the FDIC's question referred to the last examination conducted by that agency. *See United States v. O'Boyle*, 680 F.2d 34 (6th Cir.1982); *United States v. Gibson*, 675 F.2d 825 (6th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). Under that theory, Walker's answers were false. Further, there is no evidence to indicate that Walker disclosed the transactions at issue to state officials, or even that state officials require such a disclosure. Finally, the testimony showed that, after an FDIC official explained the question to Walker in 1985, he changed his answer to this question to re-

veal two previously omitted loans, but failed to disclose the Holloway and Jones loans. The government was required to show that Walker knowingly and willfully made a false entry in the questionnaire regarding a material fact, with the intent to deceive the FDIC. *United States v. McGuire,* 744 F.2d 1197, 1200 (6th Cir. 1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985). The evidence adduced at trial, taken in the light most favorable to the government, would allow a reasonable jury to draw that conclusion.

■ Nor was Walker entitled to a directed verdict on counts 3 through 21 of the indictment. These counts allege false entries in bank records based upon the recordation of interest payments on the Hastings loans. These records recorded the fact that interest payments had been made, but did not reveal that the payments were not made with Hastings' funds or that the loans were not made for Hastings' benefit. Walker contends that the entries are not false because they recorded actual transactions exactly as they occurred.

A statement may be false when it contains a half truth or when it conceals a material fact. *McGuire,* 744 F.2d at 1200, n. 2; *United States v. Krepps,* 605 F.2d 101, 108 (3rd Cir.1979) ("an entry may be false by virtue of an omission of material information as much as by an actual misstatement"). Here, the records failed to disclose Walker Grain's interest in the loans and the fact that Walker Grain made the interest payments on Hastings' behalf. Both facts may be regarded as material. The jury was entitled to conclude that these entries were false.

Walker argues that the entries are not false because they recorded actual transactions exactly as they occurred. In *United States v. Hardin,* 841 F.2d 694, 697 (6th Cir.1988), we noted, "It is undisputed that an entry that shows a transaction as it actually occurred is not a false entry under section 1005." That rule remains undisputed, but does not require that Walker's conviction be reversed. In *Hardin,* a bank official made a questionable loan of $250,-000 to a business in which his wife had an interest. The loan was sold to another bank. Two years later, the bank official renewed the loan, using the proceeds to extinguish his bank's obligation to the purchasing bank. The bank records disclosed a $250,000 loan to the business. The indictment charged that this entry was false because the loan was not made to the business, but to another bank. At trial, the government failed to prove that the loan was never made; instead it argued that the loan was a sham or a mere formality. Since the government failed to prove that the loan was never made, the defendant's conviction for making false statements was reversed.

This case is distinguishable from *Hardin* on its facts. Here the government alleged and proved that the entries at issue were false because they failed to disclose that the loans were not made for the benefit of the named borrower and that the named borrower had not made the interest payments with his own funds. *Hardin* expressly distinguished cases involving loans made for the benefit of unnamed third parties. *Id.* at 698. Further, the charge in this case was that the entries failed to disclose material information, not that they recorded interest payments or loans which had never been made. The entries at issue are false not because they fail to disclose the manner in which a transaction occurred, but because they fail to disclose the true beneficiary of the loans at issue.

Walker argues that the trial court erred in refusing to grant a judgment of acquittal on Count 24 of the indictment. This count alleges a false entry in the minutes of the finance committee meeting which approved the Holloway loan. That entry stated, "Dan Holloway, application for loan of $122,000 at FBP for one year ... to pay off farm note at First Tennessee Bank, secured by deed of trust on farm. Approved." The government argued at trial that this entry was false because it misled the finance committee into believing that the bank's loan to Holloway would be secured by a deed of trust on a farm, when the loan was in fact unsecured. Walker points out that the loan documents indicate

that the loan was unsecured. No member of the finance committee testified that Walker told them the loan would be secured. Walker concludes that, because the minute entry can be read two ways, he was entitled to a verdict of acquittal on this count.

We disagree. The minute entry may, indeed, be read in two ways, one favorable to Walker and one unfavorable. In considering Walker's motion for a judgment of acquittal, the district court was required to view the evidence in the light most favorable to the government. There was sufficient evidence to allow the jury to conclude that this entry was false, and Walker's argument to the contrary is without merit. *See, United States v. Johnson,* 741 F.2d 854, 856 (6th Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984); *United States v. Green,* 548 F.2d 1261, 1262 (6th Cir.1977).

Walker's challenge to his conviction on Count 28 of the indictment is equally without merit. On January 18, 1985, Walker applied for a loan of $200,000 from the bank for Walker Grain Company. On that date, Walker Grain Company's checking account at the bank was overdrawn by $293,-072.06. In applying for the loan, Walker assured Gary Carlton that he had a check for $300,000 coming in which would cover the overdraft. The check was written on a Walker Grain Company checking account at First Citizens Bank. This account had been closed in June, 1982 and there were no funds in the account to cover the $300,-000 check. Walker testified at trial that the check was written because he had applied for a loan in that amount from First Citizens Bank, although the loan had not yet been approved. He testified that he informed Mr. Carlton of these facts. The loan from First Citizens Bank was never approved, although there was no evidence that Walker Grain Company's $300,000 check was dishonored by that bank. On January 24, 1985, Farmers Bank loaned $190,000 to Walker Grain Company and the proceeds were deposited into the Walker Grain Company account. These proceeds, together with the proceeds of the Jones loan, allowed Farmers Bank to cover the $300,000 check written on the First Citizens account, curing the overdraft in the Walker Grain Company account.

Walker argues that he made no false statements to Carlton in order to receive the $190,000 loan, because he explained to Carlton that the $300,000 check would be covered by a loan from First Citizens. As the government argues, however, the jury was entitled to view Walker's statements as false because he failed to tell Carlton that Walker Grain Company's checking account at First Citizens had been closed for nearly four years. Further, in the course of applying for the loan from Farmers Bank, Walker failed to inform Carlton that the grain company already had hundreds of thousands of the bank's dollars in its coffers from the Hastings and Jones loans. Certainly these are omissions of material fact which the jury was entitled to consider in determining Walker's guilt. That they chose not to accept Walker's version of the events is no ground for reversing his conviction.

We conclude, therefore, that the jury's verdict on each count of the indictment must be affirmed. The district court did not err in admitting evidence of Hastings' guilty plea and plea agreement, or in excluding evidence of the named borrowers' ability to repay the loans at issue in counts 1, 23 and 27 of the indictment. While evidence of the named borrowers' ability to repay and understanding of their obligation to do so may be relevant in certain cases, it is not where, as here, the individual who actually benefited from the loan was a bank officer. The prosecution is not barred by the applicable statute of limitations, and the district court did not err in denying Walker's motion for judgment of acquittal on the remaining counts of the indictment. Accordingly, we AFFIRM Walker's conviction on all counts. Given our disposition of Walker's appeal, we see no need to address the issues raised in the government's appeal.